575 A.2d 427

LAST CHANCE DEVELOPMENT PARTNERSHIP, A NEW JERSEY GENERAL PARTNERSHIP; BAYSHORE ASSOCIATES, A NEW JERSEY GENERAL PARTNERSHIP; SAW MILL ASSOCIATES, A NEW JERSEY GENERAL PARTNERSHIP; FREDERICK W. SCHMIDT, JR.; STONE HARBOR BOULEVARD CORPORATION, A NEW JERSEY CORPORATION; FERGUSON DEVELOPMENT CORPORATION, A NEW JERSEY CORPORATION; BALD EAGLE ENTERPRISES, INC., A NEW JERSEY CORPORATION; AND LONG BEACH TOWNSHIP OCEAN FRONT PROPERTY OWNERS ASSOCIATION, RESPONDENTS, v. THOMAS H. KEAN, GOVERNOR OF NEW JERSEY; CHRISTOPHER J. DAGGETT, ACTING COMMISSIONER; AND NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, APPELLANTS.

Argued November 27, 1989—Decided June 20, 1990.

*Harley A. Williams,* Deputy Attorney General, argued the cause for appellants *(Peter N. Perretti, Jr.,* Attorney General of New Jersey, attorney; *Mary C. Jacobson,* Deputy Attorney General, of counsel).

*Richard M. Hluchan* argued the cause for respondents *(Levin & Hluchan,* attorneys).

PER CURIAM.

The Waterfront Development Act provides generally for state regulation of the development of property along the waterfront of navigable waters. This case requires the Court to decide whether the New Jersey Department of Environmental Protection ("DEP" or "Department") exceeded its statutory

authority in promulgating either or both of two rule amendments to the Act. Those amendments extend DEP's regulatory authority to developments in upland areas extending considerably beyond the waterfront itself. The Appellate Division determined that the first amendment, which imposed no specific territorial limitation on the upland areas encompassed by the rules, exceeded the authority of the Waterfront Development Act and was therefore invalid. *Last Chance Dev. Partnership v. Kean,* 232 *N.J.Super.* 115, 556 *A.*2d 796 (1989).

Immediately following the Appellate Division's decision, DEP again amended the rules, imposing a territorial limitation on the upland areas covered by the regulations. Governor Kean and DEP filed a petition for certification to review the Appellate Division decision invalidating the regulations. They claimed that the rule amendment as initially promulgated by DEP was a valid exercise of administrative authority under the Act. In the alternative, they claimed that the most recent rule amendment, limiting the territorial extent of the State's regulatory authority, overcame the grounds relied on by the Appellate Division in invalidating the original rules and thus should be declared valid. Plaintiffs opposed the petition, contending that the Department's rules, even in their current form, are invalid. We granted the petition for certification, 117 *N.J.* 135, 564 *A.*2d 860 (1989).

## I.

The rules that are the subject of this appeal were promulgated pursuant to the Waterfront Development Act ("Act"), originally enacted in 1914. *L.* 1914, *c.* 123; *N.J.S.A.* 12:5–1 to –11. It currently provides:

> All plans for the development of any waterfront upon any navigable water or stream or bounding thereon, which is contemplated by any person or municipality, in the nature of individual improvement or development or as a part of a general plan which involves the construction or alteration of a dock, wharf, pier, bulkhead, bridge, pipeline, cable or any other similar or dissimilar waterfront development shall be first submitted to the Department of Environmental Protection. No such development or improvement shall be commenced or

executed without the approval of the Department of Environmental Protection first had and received, or as hereinafter in this chapter provided. [*N.J.S.A.* 12:5–3.]

The Department promulgated its rule amendments following a declaration by Governor Kean that the coastal areas of the state were in "imminent peril" and required protective regulations. The first amendment adopted by the Department on December 2, 1988, provided that the regulatory authority under the Act

> extend inland to include an adjacent upland area measured from the most inland beach, dune, wetland or other water area, ... to the greater of (1) 100 feet; or (2) the inland limit of the first property associated with residential, commercial or industrial use that involves a permanent building based on property lines existing on October 3, 1988. [*N.J.A.C.* 7:7–2.3(a)2.]

In a statement accompanying the publication of the proposal of that rule, DEP expressed concern that construction had occurred "in a piecemeal fashion without regard to cumulative impacts upon the special nature of the coastal area [and that] [a]bsent the adoption, the State will continue to suffer serious and cumulative adverse social and aesthetic effects." 20 *N.J.R.* 2815 (Nov. 7, 1988). To protect the coast from the environmental hazards of development, the rule would have established a "buffer zone" extending DEP's regulatory authority to the territorial areas covered by the Coastal Area Facility Review Act, *N.J.S.A.* 13:19–1 to –21 (CAFRA), and, within those areas, to projects of fewer than twenty-five units, which would not otherwise be subject to CAFRA regulation. As acknowledged by DEP, the rules were a response "to insufficient control and continued development in land areas within the CAFRA area approximate to tidal water." *Ibid.*

Plaintiffs Last Chance Development Partnership, Bayshore Associates, Saw Mill Associates, Frederick W. Schmidt, Jr., Stone Harbor Boulevard Corporation, Ferguson Development Corporation, Bald Eagle Enterprises, and Long Beach Township Ocean Front Property Owners Association, are developers and property owners of lands not directly adjacent to any waterfront. Claiming that the amendment would subject the devel-

opment of their properties to State regulation, they challenged the rule in the Appellate Division, which determined that the Act did not authorize DEP regulation of upland areas that otherwise fell within the CAFRA region. It reasoned that with respect to uplands, the Act contemplated regulation of development only of "narrow strips of land" immediately contiguous to the waterfront itself, and that the rule in effect subjected upland areas to regulation without reference to any territorial limits or requirements of contiguity. 232 *N.J.Super.* at 130–31, 556 *A.*2d 796. The Appellate Division also ruled that applying the regulations to developments or projects of twenty-four units or fewer was invalid. It found that CAFRA's explicit and specific exemption from regulatory control of facilities of twenty-four dwelling units or fewer prevailed over the contrary provision of the emergency rule amendments. *Ibid.*

On April 11, 1989, four days after the decision of the Appellate Division, the Department promulgated another amendment to the rule. That amendment limits the regulatory authority to uplands that are no more than 1,000 feet from most inland, dune, beach, or wetland. The Attorney General contends that that territorial limitation conforms to the Appellate Division's requirement that only "narrow strips" of property adjacent to the waterfront can be regulated under the Waterfront Development Act.

We must determine, therefore, whether the Waterfront Development Act authorizes State-agency regulation of developments on land that is not actually next to, on, over, or in the waterway as such, and, if so, what standards must define the scope of such authority or territorial limitations.

## II.

On its face, the Waterfront Development Act is concerned with the regulation of development immediately contiguous to "navigable water"; it refers to "development of any *waterfront* upon any navigable water." *N.J.S.A.* 12:5–3. Ambiguity

arises, however, because the Act neither defines nor describes what is encompassed by the term "waterfront," nor does it indicate how far inland or upland waterfront property may extend, or even whether a development must directly involve the waterfront or the waterway itself. Although the enumeration of illustrative "developments" in the Act includes projects that would normally be directly on the waterfront and be in, over, on, or next to the water itself, *e.g.*, "dock, wharf, pier," *N.J.S.A.* 12:15–3, the statutory definition also includes "any other similar or *dissimilar* waterfront development." *Ibid.* (emphasis added). Presented with such ambiguity, we must look beyond the language of the statute itself to find the underlying intent of the legislation. *State v. Churchdale Leasing*, 115 *N.J.* 83, 557 *A.*2d 277 (1989).

The Appellate Division undertook a thorough and well-reasoned analysis of the legislative history of the Act, concluding that the primary concern of the Legislature was to regulate the commercial development of the waterfront. 232 *N.J.Super.* at 119–22, 556 *A.*2d 796. As the Appellate Division stated:

> While we acknowledge that the Legislature was concerned with the revitalization of the entire waterfront area when it enacted the Waterfront Development Act, it is equally plain that its principal objective was to facilitate navigation and commerce. The Act was not designed to empower the DEP to regulate upland areas distant from any coastal waterway. The legislative history of the Act, which we have recited in detail, compels that conclusion. [*Id.* at 128, 556 *A.*2d 796.]

With the enactment of CAFRA in 1973, the Legislature sought to effectuate the comprehensive regulation of the State's coastal areas stretching from Sandy Hook to Cape May to the Delaware Memorial Bridge, and extending twenty miles inland from the Atlantic Ocean and Delaware Bay. *N.J.S.A.* 13:19–4. Neither at that time nor in the following years did either DEP or the Legislature attempt to define, apply, or extend the regulatory jurisdiction of the State under the Act itself beyond land on or immediately contiguous to the waterfront of navigable waters. As the Appellate Division noted, "At no time during this period [1914–1980] did the State ever

assert that it had regulatory authority over upland areas above the mean high waterline." 232 *N.J.Super.* at 121, 556 *A.*2d 796.

The Legislature declared that CAFRA was designed to strike a balance between protection of the environment and reason-. able and appropriate economic development. *Ibid.* The legislation was thus said

> to encourage the development of compatible land uses in order to improve the overall economic position of the inhabitants of that area within the framework of a comprehensive environmental design strategy which preserves the most ecologically sensitive and fragile area from inappropriate development and provides adequate environmental safeguards for the construction of any facilities in the coastal area. [*Ibid.*]

In furtherance of its objectives, the legislation directs the Commissioner of DEP to develop an environmental design strategy, including "a delineation of various areas appropriate for the development of residential and industrial facilities of various types...." *N.J.S.A.* 13:19–16. CAFRA provides that no "facility" shall be constructed without a permit from the DEP. *N.J.S.A.* 13:19–5. CAFRA defines the term "facilities" by including structures designed or utilized for twelve enumerated purposes, and lists fifty-eight specific types of industrial and residential facilities subject to regulation. *N.J.S.A.* 13:19–3(c). Included in the definition of "facility" are "[n]ew housing developments of 25 or more dwelling units" and "expansion of existing housing developments of 25 or more dwelling units...." *Ibid.* CAFRA thus exempts the construction of twenty-four or fewer dwelling units from the requirement of obtaining a permit.

Seven years after CAFRA had been enacted, on September 30, 1980, DEP promulgated the Waterfront Development Permit Rules, asserting upland jurisdiction to a distance of 500 feet from the mean high water line.[1] The validity of the 1980

---

[1]This regulation, *N.J.A.C.* 7:7–2.3(a) (before 1988 amendments), extended DEP's jurisdiction

> from the mean high water line to the adjacent area upland extending to the first paved road, railroad or surveyance property line ... generally parallel

regulations was challenged, and the Appellate Division, in an unreported decision, upheld those regulations in *New Jersey Builders Association v. New Jersey* (Docket No. A–984–80T1, November 30, 1982). The court stated that "the Legislature intended the term "waterfront," as used in *N.J.S.A.* 12:5–3 of the Waterfront Development Act to include the land adjacent to navigable waters." There is no indication, however, that the court's holding contemplated that DEP's jurisdiction over uplands could cover developments separate and apart from the waterfront itself or that it would include developments otherwise subject to CAFRA strictures. The court observed, "the Legislature was concerned with the revitalization of the entire waterfront area, adjacent land included, for the economic advantage and general welfare of the State." Nowhere does the opinion imply that the Act could be applied to developments within CAFRA jurisdiction or otherwise not directly connected with the waterfront itself or for noncommercial uses or for purely environmental purposes. *Cf. Parisi v. North Bergen Mun. Port Auth.*, 105 *N.J.* 25, 37, 519 *A.*2d 327 (1987) (municipal port authority has power under MPAL to regulate only those strictures that are "directly and clearly related to port purposes").

The current rule amendments have distinctively different purposes and effects than those of the 1980 rule. We must examine those amendments in the context of past agency practice, though with a critical eye when measured against the statute itself. *See Smith v. Director, Div. of Taxation*, 108

---

to the waterway, provided that the landward boundary of the upland area shall be no less than 100 feet and no more than 500 feet from the mean high water line.

Specifically exempted from the regulation were upland areas subject to CAFRA jurisdiction. As the Appellate Division noted, that regulation followed the Attorney General's *Formal Opinion* 1980–No. 6, which sounded a cautionary note about attempting to regulate too far upland from navigable waters. The Attorney General warned that any extension of DEP's regulatory authority under the Act would be "subject to a reasonable maximum distance limitation." 232 *N.J.Super.* at 124, 556 *A.*2d 796.

*N.J.* 19, 26, 527 *A.*2d 843 (1987) (quoting *Airwork Serv. Div. v. Director, Div. of Taxation,* 97 *N.J.* 290, 296, 478 *A.*2d 729 (1984) ("administrative regulations are not binding on the courts and a regulation will fall if a court finds that the rule is inconsistent with the statute it purports to interpret.... [W]hen the court can identify a particular legislative intent, that intent cannot be 'outweighed or overcome simply by a countervailing administrative practice.' ")); *Waterfront Comm'n v. Mercedes–Benz,* 99 *N.J.* 402, 415, 493 *A.*2d 504 (1985) ("[T]his Court is not bound to follow an enforcing agency's construction of a regulatory statute.").

It is clear that in adopting the first amendment in 1988, DEP sought to regulate environmental effects of development, rather than developmental effects on commerce and navigation. DEP's most recent amendment also seeks to regulate environmental effects of development, although the scope of territory encompassed by the regulation has been vastly curtailed. Thus, DEP described the purpose of the regulation:

[T]he coastal area is one of the fastest developing regions of the State, ... land use management problems are intensifying as development and redevelopment pressures build, and ... restricting regulation to developments with 25 units or more essentially leaves over half of waterfront development without adequate safeguards. The need for comprehensive land use management is evidenced in water quality problems attributed to non-point source pollution, in impacts to coastal resources such as beaches, dunes and critical wildlife habitat, in uncoordinated development that fails to address regional. impacts, in conversion of marinas to non-water dependent uses, and in the potential for loss of life or property in high-hazard areas.

["Statement of Imminent Peril to Public Health, Safety and Welfare Mandating Adoption of New Rule at *N.J.A.C.* 7:7–2.3 by Emergency Proceedings," DEP, 1988.]

Substantial deference should be attributed to the contemporaneous construction, long usage, and practical interpretation given to the Act by the DEP and its predecessors, the administrative agencies charged with enforcement of the statutory scheme. *See Smith v. Director, Div. of Taxation, supra,* 108 *N.J.* at 25–26, 527 *A.*2d 843; *Malone v. Fender,* 80 *N.J.* 129, 137, 402 *A.*2d 240 (1979). Since its inception, the Act has been

viewed as filling a need for regulating commercial development of the waterfront itself; there is no history of any administrative practice indicating a different or contrary understanding of the Act. For more than sixty years the State had employed the Act exclusively to regulate developments below the mean water line of navigable waters.[2]

■ An agency's construction of a statute over a period of years without legislative interference will generally be granted great weight as evidence of its conformity with the legislative intent. *Malone v. Fender, supra,* 80 *N.J.* at 137, 402 *A.*2d 240; *see also In re Board of Educ. of Boonton,* 99 *N.J.* 523, 534, 494 *A.*2d 279 (1985) ("an administrative agency's interpretation of a statute it is charged with enforcing is entitled to substantial weight."). Such long-standing practice may, in some cases, be more determinative of legislative intent than the agency's recent, conflicting interpretation. In *Department of Environmental Protection v. Stavola,* 103 *N.J.* 425, 511 *A.*2d 622 (1986), DEP sought to enjoin construction of "cabanas" despite the fact that it had previously failed to apply CAFRA to similar constructions. The Court indicated that DEP's recent interpretation of CAFRA as applicable to cabanas should not be accorded as much weight as the previous, longstanding failure of DEP to apply CAFRA to similar structures.

■ *Stavola* closely parallels this case. Here, the amendments at issue are an attempt by DEP to apply the Act to relatively distant uplands after more than a half-century of a contrary understanding of the purpose and effect of the Act. It is also the first time DEP has attempted to use the Act to regulate developments encompassed by CAFRA, and to regulate projects that are specifically exempted from regulation by

---

[2]As the Appellate Division noted, the most recent *legislative* amendment to the Act, *L.*1981, *c.* 315, sec. 1, exempting the repair, replacement, or renovation of residential buildings from the Act's strictures, bolsters the conclusion that the Act was designed to regulate commercial development. 232 *N.J.Super.* at 133 n. 2, 556 *A.*2d 796.

CAFRA. Further, as noted, these new amendments are explicitly for environmental purposes independent of regulating commercial development immediately adjacent to, if not on, the waterfront itself. As in *Stavola*, we find the previous, long-standing application of the Act to be more determinative of legislative intent than DEP's recent regulatory enactments. DEP's failure, even with the enactment of CAFRA in 1973, to extend its regulatory authority to upland development not necessarily having a direct effect on the waterfront for another fifteen years indicates an understanding that such authority was not contemplated by the Act.

### III.

That the Act was born of a need to regulate development affecting commerce in New Jersey's waterways is clear not only from DEP's previous long-standing failure to regulate beyond the mean water line, but also from the face of the statute and its legislative history, including the fact that the Act was promulgated under Title 12, "Commerce and Navigation," and not Title 13, "Conservation and Development."

By our holding today, we do not mean to imply that any regulation above the mean water line is outside the bounds of the Act. Indeed, we recognize that environmental concerns are inextricably linked with the regulation of commerce. As the Attorney General has stated, environmental damage to our coastal areas is detrimental to the state's four-billion-dollar-per-year tourist industry. However, the regulations now at issue were explicitly promulgated to address an environmental concern involving "imminent peril" to New Jersey's coastal areas. Because of their expansive scope, the amendments facially do not fall within the Act's purpose of unifying the governance of development that affects commerce in the waters. It is conceivable, however, that a well-crafted regulation tying the development of adjacent uplands to potential damage to the

waterfront and water resources of the State could withstand scrutiny. *See New Jersey Builders' Ass'n, supra.*

Thus, the regulations are *ultra vires* not because they impinge on CAFRA's geographical or territorial jurisdiction, but because the regulations have exceeded the Act's underlying purpose of regulating commerce along the waterfront itself. We hold, therefore, that the Act permits DEP to regulate only that development which has a direct effect on New Jersey's navigable waterways. We are not called on to consider whether any development within 500 feet of the boundary described by the 1980 rule presumptively has such a direct effect. We are satisfied that beyond that distance State regulation of development that is not undertaken pursuant to the authority of CAFRA or that is otherwise specifically exempted from CAFRA jurisdiction must have a direct effect on the waterfront and waterways as such.

With respect to development beyond land areas adjacent to navigable waters, there are no standards in the current rule that require such development to have a direct effect on the waterfront and waterways. All that the rule supplies is a territorial limit that extends a substantial distance—1,000 feet—from the waterfront itself. When the Legislature utilizes maximum footage to circumscribe regulating powers, its determination is subject to judicial scrutiny. *See Larkin v. Grendel's Den,* 459 *U.S.* 116, 124, 103 *S.Ct.* 505, 510, 74 *L.Ed.*2d 297, 305 (1982) (absolute ban on liquor outlets must be "within reasonable prescribed distances" from churches). Thus, valid regulatory authority sought to be exercised pursuant to the Act, at least beyond 500 feet, must encompass a showing that the proposed development, in relationship with surrounding land, will directly affect the waterfront and the waterway. *Cf. Stephens v. United States,* 11 *Cl.Ct.* 352 (1986) (in considering effect of overflights on value of plaintiffs' land, court should consider the "character of the area immediately adjacent to plaintiffs' land" rather than adopt a bright-line rule).

The Appellate Division judgment invalidating *N.J.A.C.* 7:7–2.-3(a)2 as initially promulgated is affirmed. We further determine that *N.J.A.C.* 7:7–2.3(a)2 as most recently amended is invalid.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.