584 A.2d 820

LONG BEACH TOWNSHIP OCEANFRONT PROPERTY OWNERS ASSOCIATION, APPELLANT, v. NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, JUDITH A. YASKIN, COMMISSIONER, AND JAMES J. FLORIO, GOVERNOR, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued November 15, 1990—Decided December 26, 1990.

Before Judges GAULKIN, SHEBELL and SKILLMAN.

*Richard M. Hluchan* argued the cause for appellant (*Levin & Hluchan,* attorneys; *Richard M. Hluchan* and *Glenn A. Harris,* on the brief).

*Kathe Mullally,* Deputy Attorney General, argued the cause for respondents (*Robert J. Del Tufo,* Attorney General, attorney; *Mary C. Jacobson* and *John M. Van Dalen,* Deputy Attorneys General, of counsel; *Kathe Mullally,* on the brief).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

This appeal is a sequel to *Last Chance Dev. Partnership v. Kean,* 119 *N.J.* 425, 575 *A.*2d 427 (1990) (hereinafter *Last Chance* ). In *Last Chance* the Supreme Court invalidated rules of the Department of Environmental Protection (DEP), *N.J.A.C.* 7:7–2.3(a)2, adopted pursuant to the Waterfront Development Act (the Act), *N.J.S.A.* 12:5–1 to –11, which provided for extensive regulation of development within 1,000 feet of navigable waterways. The Court found that the Act was intended solely "to regulate development affecting commerce in New Jersey's waterways." 119 *N.J.* at 435, 575 *A.*2d 427. Consequently, the Act does not confer authority upon DEP to regulate "for environmental purposes independent of regulating commercial development immediately adjacent to, if not on, the waterfront itself." *Ibid.* And because DEP's rules contained "no standards" requiring regulated development "to have a direct effect on the waterfront and waterways," the Court concluded that they were invalid. *Id.* at 436, 575 *A.*2d 427. However, the Court further observed that "[i]t is conceivable ... that a well-crafted regulation tying the development of adjacent wetlands to potential damage to the waterfront and water resources of the State could withstand scrutiny." *Id.* at 435–436, 575 *A.*2d 427.

Less than a month after the Court's decision in *Last Chance,* DEP adopted emergency amendments to its waterfront development rules, which redefined their territorial scope. On August

16, 1990, appellant Long Beach Township Oceanfront Property Owners Association filed a notice of appeal from the emergency amendments. Subsequently, we granted appellant's motion for acceleration of the appeal. On September 14, 1990, DEP readopted the amendments in the same form in accordance with the normal rule-making procedures of the Administrative Procedure Act (APA), *N.J.S.A.* 52:14B-4(a). Appellant also filed a notice of appeal from the adoption of the permanent rule amendments. On appellant's motion, we consolidated the two appeals.

Although the emergency amendments to the waterfront development rules expired on September 14, 1990 (*see N.J.S.A.* 52:14B-4(c), which limits the effective period of an emergency rule to a maximum of 60 days), appellant urges us to review DEP's invocation of the emergency rule-making procedures of the APA because this practice is capable of repetition yet evading review. We consider such review unnecessary. Any issue regarding the appropriateness of DEP adopting the amendments under the emergency procedures of *N.J.S.A.* 52:14B-4(c) is moot, because the same amendments have now been readopted in accordance with the normal rule-making procedures of *N.J.S.A.* 52:14B-4(a). Furthermore, any future use of the emergency rule-making procedure would have to be reviewed on the basis of the particular facts then presented. We also note that an appeal from the emergency adoption of the prior version of the rules was dismissed by this court as moot, *Last Chance Dev. Partnership v. Kean,* 232 *N.J.Super.* 115, 117, 556 *A.*2d 796 (App.Div.1989), and that the Supreme Court did not address the issue. Accordingly, we deal solely with the validity of the permanent amendments to the waterfront development rules.

Initially, we note that the territorial scope of the present version of the waterfront development rules is broader in some respects than its predecessor. Although the present version of the rule reduces the area subject to regulation from 1,000 to

500 feet inland of the mean high water line, the most inland oceanfront beach or most inland oceanfront dune, it deletes the part of the prior rule which excluded from regulation any property inland of the first developed property.[1]  Consequently, the new rule extends the waterfront permit requirement to inland properties which were exempt from the rule invalidated in *Last Chance.*  DEP has not even undertaken to show how the development of such a property could have the "direct effect on the waterfront and waterways" required by *Last Chance.*  119 *N.J.* at 436, 575 *A.*2d 427.

In addition, although the Act only applies to development along the waterfront of "any navigable water or stream of this State," *N.J.S.A.* 12:5–3, the rule provides for regulation of all tidal waterways and their adjoining upland areas.  *N.J.A.C.* 7:7–2.3(a)1, 2 and 3.  Since it is clear that water may be tidal even though it is not navigable, *see Schultz v. Wilson,* 44 *N.J.Super.* 591, 600–604, 131 *A.*2d 415 (App.Div.1957), certif. den. 24 *N.J.* 546, 133 *A.*2d 395 (1957), DEP's waterfront development rules are *ultra vires* insofar as they purport to regulate development along non-navigable tidal waters.

The most fundamental defect of the rules is the total absence of any showing that all development within 500 feet of navigable waters has the "direct effect on New Jersey's navigable waterways" required to establish jurisdiction under the Act as

---

[1]Under the prior rules the regulated waterfront in coastal areas consisted of any tidal waterway ... and all lands lying thereunder, up to the mean high water line and adjacent upland area measured from the most inland beach, dune, wetland or other water area ... to the lesser of: (i) one thousand feet; or (ii) the inland limit of the first property associated with residential, commercial or industrial use that involves a permanent building based on property lines existing on October 3, 1988....

Under the new rules, the regulated waterfront in coastal areas consists of any tidal waterway and all lands lying thereunder up to the mean high water line and ... an adjacent upland area to a boundary 500 feet inland of the mean high water line, the most inland oceanfront beach, or most inland oceanfront dune ... measuring from that feature which results in the greatest regulated waterfront area.

interpreted in *Last Chance.* 119 *N.J.* at 436, 575 *A.*2d 427. DEP relies upon the Court's observation in *Last Chance* that: "We are not called on to consider whether any development within 500 feet of the boundary described by the 1980 rule presumptively has such a direct effect." *Id.* at 436, 575 *A.*2d 427. However, DEP has simply presumed the existence of that direct effect, without pointing to any evidence in the administrative record to support the presumption. Furthermore, *N.J. A.C.* 7:7–2.3(a)2 makes that presumption irrebuttable, because it contains no procedure by which a property owner may obtain an exemption from the permit requirement by showing that a proposed development within 500 feet of the mean high water line will have no direct effect on a navigable waterway.

In addition, although "the boundary described by the 1980 rule" to which the Court referred in *Last Chance* was the mean high water line, the boundary from which the 500 foot regulated area is measured under the present version of *N.J.A.C.* 7:7–2.3(a)2 is "the mean high water line, the most inland oceanfront beach, or most inland oceanfront dune, . . . [whichever] results in the greatest regulated waterfront area." This definition obviously would result in DEP regulation over many areas which are significantly further inland than 500 feet from the mean high water line.

Finally, the rules set forth no standards related to navigability and commerce to guide DEP's review of proposed developments. Rather, DEP's "Policy Compliance Statement For Upland Waterfront Development Permits Guide Sheet" sets forth 23 environmental policies an applicant must satisfy to obtain a development permit, which apparently incorporates by reference the general environmental regulations governing the issuance of waterfront development, wetlands and CAFRA permits, including regulations relating to beaches (*N.J.A.C.* 7:7E–3.22), dunes (*N.J.A.C.* 7:7E–3.16), wetlands (*N.J.A.C.* 7:7E–3.27), wetlands buffers (*N.J.A.C.* 7:7E–3.28), endangered or threatened wildlife or vegetation species habitats (*N.J.A.C.* 7:7E–3.-38), critical wildlife habitats (*N.J.A.C.* 7:7E–3.39), housing use

policies (*N.J.A.C.* 7:7E–7.2), resort/recreational use (*N.J.A.C.* 7:7E–7.3), water quality (*N.J.A.C.* 7:7E–8.4), vegetation (*N.J. A.C.* 7:7E–8.8), important wildlife habitat (*N.J.A.C.* 7:7E–8.9), and fertile soils (*N.J.A.C.* 7:7E–8.15). The breadth of environmental concerns which an applicant for a waterfront development permit must address provides added support for our conclusion that the present version of the waterfront development rules, like its predecessor invalidated in *Last Chance*, "[exceeds] the Acts' underlying purpose of regulating commerce along the waterfront itself." 119 *N.J.* at 436, 575 *A.*2d 427.

Accordingly, we declare *N.J.A.C.* 7:7–2.3(a)2, as amended on September 14, 1990, to be invalid.