256 N.J. Super. 676 (1992)
607 A.2d 1054
JORDAN DEVELOPERS, INC. AND GOTTARDI LIMITED PARTNERSHIP, PLAINTIFFS-APPELLANTS,
v.
THE PLANNING BOARD OF THE CITY OF BRIGANTINE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 6, 1992.
Decided June 4, 1992.
*677 Before Judges R.S. COHEN, A.M. STEIN and KESTIN.
*678 Michael D. Capizola argued the cause for appellants (Capizola, Fineman, Kutner & Pagliughi, attorneys, Michael D. Capizola and Barbara R. Lapham on the brief).
Daryl F. Todd argued the cause for respondent (Todd, Gemmel, Nugent & Fitzgerald, attorneys, Daryl F. Todd on the brief).
The opinion of the court was delivered by R.S. COHEN, J.A.D.
Defendant Planning Board refused to extend municipal approvals for a development project or to toll the period of approval. The Law Division upheld the decision of the Planning Board, and plaintiffs appealed. We affirm.
Plaintiffs own property in Brigantine in a zoning district that permits multi-family uses. The property is occupied by 24-28 rental units in a former motel. Former owners obtained approvals from the Board of Adjustment on June 8, 1988 to build a 16-unit condominium complex on the property. The approvals included site plan approval, a density variance permitting 16 instead of 12 units, and bulk variances for lot area, depth, front and rear setback, and site coverage.
Plaintiffs contracted to buy the property on October 1, 1988. Two days later, Governor Kean signed a Certification of Imminent Peril making immediately applicable to plaintiff's property a set of proposed regulations extending DEP's (now DEPE) review authority over development projects near the shore. The regulations were later adopted by DEP but were ultimately invalidated. See Last Chance Dev. Project v. Kean, 119 N.J. 425, 575 A.2d 427 (1990). Meanwhile, however, plaintiffs bought the property in late November 1988 and were involved in the permit application and approval process from February 5, 1989 until June 1989.
Two other events also occurred. The first was a January 1989 municipal zoning ordinance amendment reducing the maximum permissible height of buildings in the district from 45 to *679 either 30 or 35 feet.[1] Application of the amendment to plaintiffs' project would significantly reduce the number of buildable units. The other event was the collapse of the real estate market, and the resulting absence of demand for new condominium residences.
Plaintiffs' site plan approval protected them against ordinance changes for two years, to June 8, 1990. N.J.S.A. 40:55D-52a. As that date approached, it was apparent to plaintiffs that they could not get started before the deadline. The project was not viable while the condo market in Brigantine was glutted with 360 unsold units.
Plaintiffs applied to defendant Planning Board for a ruling that its two-year approval period was suspended or tolled, pursuant to N.J.S.A. 40:55D-21, from the date of the Governor's emergency Certification until plaintiffs received their DEP permit eight months later. The Planning Board decided on March 28, 1990 to extend the approval for only four of the eight months, to October 8, 1990.
In September 1990, still not ready to proceed, plaintiffs returned to the Planning Board and sought the additional four months they were previously denied, and also a one-year extension pursuant to N.J.S.A. 40:55D-52a. The Planning Board denied both forms of relief.
In a thorough written opinion, Judge Louis F. Hornstine affirmed both decisions of the Planning Board. We affirm substantially for the reasons stated by Judge Hornstine. We particularly note three salient elements of the case that properly affected the outcome. The first is that, although the record is unclear exactly how much time plaintiffs actually lost by reason of the unexpected DEP review process, it certainly was less than eight months. The second is that the local legislative judgment that a building height of 45 feet is excessive received *680 the deference to which it was entitled in the Board's consideration of the negative impact of extending the approvals for the proposed project. The third is that a soft real estate sales market permits but does not require a planning board to extend final approval of a development, especially in the case of a significant intervening zoning change.[2] On the other hand, an intervening zoning change does not require a board to deny an extension. There must be a balancing process, in which the board weighs the public interest in the implementation of the zoning change, the developer's interest in extended protection, and the circumstances in which the need for extension arose.
There are two matters which the parties have not raised, and which do not affect our decision, but which should not pass unnoticed. The first of them is that plaintiffs were not entitled to tolling under N.J.S.A. 40:55D-21 at all. The parties have assumed that a change in an environmental regulation to require a permitting process is an appropriate basis for tolling an approval period under N.J.S.A. 40:55D-21. By its terms, the statute applies when, during an approval period,
the developer is barred or prevented ... from proceeding with the development otherwise permitted under such approval by a legal action instituted . .. to protect the public health and welfare or by a directive or order issued by any State agency, political subdivision or court ... and the developer is otherwise ready, willing and able to proceed with said development....
The provision is not designed to deal with situations that are common in land planning contexts in which a single development is subject to approval processes in different agencies, such as a local board, a county planning board, and DEPE, and cannot proceed until all approvals are granted. Thus, if an application for development must pass review by those three *681 agencies, the tolling provisions of N.J.S.A. 40:55D-21 do not apply to suspend the running of the protected period following the local board's approval while the developer pursues the approvals of other agencies. There must be a "legal action instituted" or a "directive or order issued by a state agency, political subdivision or court." A general regulatory prohibition against development, applicable to all properties, without required permits is not a legal action or a directive or an order for the purposes of this statute.
The second matter is one which we will not decide, but deserves mention. It is the very difficult question of whether plaintiffs applied to the right agency for extension and tolling relief. The 1988 development approvals were all issued by the Board of Adjustment. Where should the developer go for subsequent relief? N.J.S.A. 40:55D-21, the tolling provision, does not say. It does not speak of applications, notices, hearings, resolutions, or any of the other concepts suitable to the statutory creation of a means for administrative adjudication of parties' rights.
N.J.S.A. 40:55D-52a is different. It provides that the zoning requirements applicable to a development shall not be changed for two years after final approval. It goes on to authorize "the planning board [to] extend such period of protection for extensions of one year but not to exceed three extensions."
An overriding policy of the Municipal Land Use Law, N.J.S.A. 40:55D-1 et seq., is to avoid the ping-ponging of development applications between the board of adjustment and the planning board. Under prior law, there had been lots of time and effort expended unproductively while each board exercised its exclusive jurisdiction over different aspects of a single development, and came to potentially inconsistent decisions. The solution was "one-stop shopping," which gives one board or the other all of the authority it needs to decide every aspect of the development application, and to bar participation by the other board. N.J.S.A. 40:55D-20; See Kaufmann v. *682 Warren Tp. Planning Bd., 110 N.J. 551, 558, 542 A.2d 457 (1988); Cronin v. Township Comm. of Chesterfield, 239 N.J. Super. 611, 618, 571 A.2d 1354 (App.Div. 1990); Amato v. Randolph Tp. Planning Bd., 188 N.J. Super. 439, 446-47, 457 A.2d 1188 (App.Div. 1982).
In general, it seems best to seek relief by way of tolling or extension of the approval period from the board that granted the development approvals. In this case, one-stop shopping would require submitting requests to the Board of Adjustment for both tolling under N.J.S.A. 40:55D-21 and extension under N.J.S.A. 40:55D-52a.
One problem is that neither the statute nor, to our knowledge, the local ordinance (see N.J.S.A. 40:55D-70b), gives the Brigantine Board of Adjustment or any other agency the authority to make tolling decisions. Another problem is that N.J.S.A. 40:55D-52a expressly authorizes only a planning board to extend approvals, including, apparently, approvals granted by a board of adjustment. See N.J.S.A. 40:55D-20. It may be argued, however, that N.J.S.A. 40:55D-76b implicitly authorizes a board of adjustment to extend approvals it originally granted.
We do not have to decide whether plaintiffs went to the wrong board for relief. If they went to the right board, they were lawfully denied relief on the merits. If they went to the wrong board, it was their choice. It would be inappropriate for us to give them another chance before the right board to gain the tolling and time extension they sought two years ago.
We have discussed these matters only to call the attention of the Bar and Legislature to them, in the hope that statutory rectification might be considered.
Affirmed.
NOTES
[1] The record contains both numbers but not the zoning amendment itself. It does not matter to the outcome whether 30 or 35 feet is correct.
[2] We understand there is legislation on the Governor's desk that would extend the expiration date of approvals that expired after January 1, 1989, to a new date of December 31, 1994. S. 417, 205th Leg.Sess. (1992). The purpose of the legislation is to aid developers caught in plaintiffs' position when encountering a soft market and loss of financing. Our decision would not change any effect of that relief legislation on plaintiffs if it becomes law.