608 A.2d 973

IN THE MATTER OF THE ISSUANCE OF A WATERFRONT DE-
VELOPMENT PERMIT # 87–1235–1 BY THE DEPARTMENT OF
ENVIRONMENTAL PROTECTION TO THE UNION COUNTY
UTILITIES AUTHORITY.

CONCERNED CITIZENS FOR THE ENVIRONMENT, DAVID
BROWN AND ANN PARKER, APPELLANTS, v. NEW JERSEY
DEPARTMENT OF ENVIRONMENTAL PROTECTION AND
UNION COUNTY UTILITIES AUTHORITY, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued March 31, 1992—Decided June 30, 1992.

---

apartment owner and two persons who identify themselves as tenants, the only relief plaintiffs seek is a declaration that chapter 299 is "void as unconstitutional" and counsel fees. The plaintiffs who identify themselves as an apartment owner and tenants do not argue, as would be expected, that the exclusion of apartments from the provisions of chapter 299 is unconstitutional, but severable, and therefore that the benefits of the legislation must be extended to apartments. See *Mahwah Township v. Bergen County Bd. of Taxation,* 98 *N.J.* 268, 294–95, 486 *A.2d* 818, *cert. denied,* 471 *U.S.* 1136, 105 *S.Ct.* 2677, 86 *L.Ed.2d* 696 (1985). Consequently, it appears that these private parties do not control the litigation and that they have been named as plaintiffs solely to avoid any possible issue regarding the standing of the League and the plaintiff municipalities to challenge chapter 299 on equal protection grounds. See *Camden County v. Pennsauken Sewerage Auth.,* 15 *N.J.* 456, 470, 105 *A.2d* 505 (1954); *Borough of Glassboro v. Byrne,* 141 *N.J.Super.* 19, 23, 357 *A.2d* 65 (App.Div.1976), *certif. denied,* 71 *N.J.* 518, 366 *A.2d* 674 (1976).

Before Judges PRESSLER, SHEBELL and SKILLMAN.

*Edward Lloyd* argued the cause for appellants (*Edward Lloyd* and *Margaret M. Hayden,* attorneys).

*Catherine A. Tormey,* Deputy Attorney General, argued the cause for respondent Department of Environmental Protection (*Robert J. Del Tufo,* Attorney General, attorney; *Paul H. Schneider,* Deputy Attorney General, of counsel; *Catherine A. Tormey,* on the brief).

*Michael G. Luchkiw* argued the cause for respondent Union County Utilities Authority (*DeCotiis & Pinto,* attorneys; *Shel-*

*don L. Cohen,* of counsel; *Jonathan L. Williams* and *Michael G. Luchkiw,* on the brief).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

The essential issue presented by this appeal is whether wetlands which the Army Corps of Engineers authorized to be filled prior to the effective date of the Freshwater Wetlands Protection Act (FWPA), *N.J.S.A.* 13:9B–1 to –30, and which are therefore exempt from regulation under that legislation, are nevertheless subject to regulation by the Department of Environmental Protection (DEP) under the Waterfront Development Act, *N.J.S.A.* 12:5–1 to –11.

The Union County Utilities Authority (UCUA) was created to implement a county solid waste management program, including the construction of a resource recovery facility. The site of the UCUA's proposed facility is a 22 acre parcel in Rahway bordered to the south and east by the Rahway River. In the past the site was used for illegal dumping and as a result was filled to a depth of eight to fourteen feet with tar, wood, glass, slag, asphalt, plastic and other types of solid waste. The site also contains seventeen pockets of isolated wetlands totalling less than half an acre, which resulted from the collection of rainwater in small depressions on the surface of the dump. These wetlands do not have any hydrologic connection to each other or to the Rahway River.

Since the site for the proposed resource recovery facility is located on the Rahway River and thus is subject to the Waterfront Development Act, the UCUA was required to obtain a waterfront development permit. The UCUA's application for this permit included a plan to replace the isolated pockets of wetland on its site with approximately one acre of intertidal wetlands which would be located along the Rahway River. The UCUA proposed to construct a public recreation area on this part of the site consisting of a ten foot wide boardwalk/path

system for walking, jogging, bird watching and fishing, picnic areas and a small public parking lot.

In addition to a waterfront development permit, the UCUA was required to apply for numerous other federal, state and local permits. One of these permits was a "nationwide permit" from the Army Corps of Engineers authorizing the UCUA to fill the isolated wetlands on its site. Based in part on the results of a joint visit to the site on March 4, 1987 by representatives of the Army Corps and the DEP, the Army Corps issued a nationwide permit to the UCUA on December 28, 1987.

After considering written and oral comments of members of public and staff evaluations, the DEP granted the UCUA's application for a waterfront development permit on January 8, 1990. The appellants filed a notice of appeal on February 21, 1990.[1] The UCUA sold bonds for the construction of its facility and held a groundbreaking in late December of 1991. Appellant moved for a stay of the permit on December 23, 1991, which we denied. Appellants then moved for a stay before the Supreme Court, which also denied their application.[2]

Appellant contends that the DEP violated one of its own regulations in issuing a waterfront development permit to the UCUA. The regulation relied upon by appellants provides that "[i]n general, development of all kinds is prohibited in Wetlands," unless the DEP finds that the proposed development "[r]equires water access or is water-oriented as a central purpose of the basic function of the activity" and "[h]as no prudent or feasible alternative on a non-wetland site." *N.J.A.C.* 7:7E–

---

[1]Appellants also appealed from the DEP's grant of a solid waste permit for UCUA's resource recovery facility. Our opinion affirming the grant of that permit is being issued simultaneously with this opinion.

[2]The record before us does not indicate the status of construction of the facility.

3.27(b)(1) and (2).[3] In its answering briefs, the UCUA argues that because it received a nationwide permit from the Army Corps of Engineers authorizing the filling of wetlands on the site, the FWPA exempts its facility from wetlands regulation by the DEP and therefore it is not required to comply with *N.J.A.C.* 7:7E–3.27(b). In the alternative, the UCUA argues that its facility complies with this regulation. The DEP argues that the UCUA's application for a waterfront development permit was subject to *N.J.A.C.* 7:7E–3.27(b) but that the UCUA demonstrated compliance with this provision.

We conclude that the UCUA's facility is exempt from *N.J.A.C.* 7:7E–3.27(b), and since appellants challenge DEP's grant of a waterfront development permit solely on the basis of this regulation, we affirm the DEP's action.

*N.J.S.A.* 13:9B–30 provides that the FWPA is the exclusive authority for the regulation of freshwater wetlands:

It is the intent of the Legislature that the program established by this act for the regulation of freshwater wetlands constitute the only program for this regulation in the State ... To this end ... this act, on and subsequent to its effective date, shall supersede any law or ordinance regulating freshwater wetlands enacted prior to the effective date of this act.

In *New Jersey Chapter of the Nat'l Ass'n of Indus. & Office Parks v. New Jersey Dep't of Envtl. Protection*, 241 *N.J.Super.* 145, 153, 574 *A.*2d 514 (App.Div.), *certif. denied*, 122 *N.J.* 374, 585 *A.*2d 379, 380 (1990) (hereafter NAIOP), we concluded that the intent of *N.J.S.A.* 13:9B–30 was that "no preexisting

---

[3]When the UCUA's waterfront development permit was granted, this regulation was codified under *N.J.A.C.* 7:7E–3.25(b). The recodification of the regulation under *N.J.A.C.* 7:7E–3.27(b), effective July 24, 1990, *did not change the* substance of the provisions relied upon by appellants. See 22 *N.J.R.* 2542(b). The other subsections of *N.J.A.C.* 7:7E–3.27(b) condition development in wetlands upon a showing that the development "(3) [w]ill result in minimum feasible alteration or impairment of natural tidal circulation (or natural circulation in the case of non-tidal wetlands); and (4) [w]ill result in minimum feasible alteration or impairment of natural contour or the natural vegetation of the wetlands." Appellants do not contend that the UCUA failed to comply with either of these subsections.

law of any kind could be deemed effective to regulate freshwater wetlands after the [FWPA] took effect." However, we recognized that there are some laws other than the FWPA which are not "designed specifically to regulate wetlands" but nevertheless "may do so incidentally in the course of implementing their function or purpose." *Id.* at 154, 574 *A.*2d 514. Accordingly, we held that:

[W]here a regulation or statute, other than the Wetlands Act or its regulatory progeny, purports to regulate a freshwater wetland based upon "wetland" concerns alone, it has been superseded by the Wetlands Act. Where another regulation or statute has merely a tangential or ancillary effect upon a wetland and is predicated upon a different regulatory concern, be it water quality, flood control, pollution, or whatever, we do not believe the Legislature intended to render the other concern meaningless.... The DEP will no doubt have to harmonize these regulatory interests when considering applications both within and outside the Wetlands program. Suffice it for us to say that the DEP has no power under the Wetlands Act to regulate any wetlands aspects of exempt programs through other State permit programs.... Wetlands regulations cannot be transported into other permit programs or revived for application thereunder if they are still on the regulatory books pertinent to those programs. [*Id.* at 156–58, 574 *A.*2d 514].

Therefore, when a law is alleged to conflict with the preemptive intent of the FWPA expressed in *N.J.S.A.* 13:9B–30, the court must determine whether the law directly regulates wetlands "based upon 'wetland' concerns alone" or "has merely a tangential or ancillary effect upon a wetland and is predicated upon a different regulatory concern."

The UCUA was required to obtain a waterfront development permit pursuant to the Waterfront Development Act, which requires DEP review of the plans for any development upon or adjoining a navigable waterway:

All plans for the development of any waterfront upon any navigable water or stream of this State or bounding thereon, which is contemplated by any person or municipality, in the nature of individual improvement or development or as a part of a general plan which involves the construction or alteration of a dock, wharf, pier, bulkhead, bridge, pipeline, cable, or any other similar or dissimilar waterfront development shall be first submitted to the Department of Environmental Protection. [*N.J.S.A.* 12:5–3(a)].

The objective of this legislation is to regulate commercial development of the waterfront to facilitate navigation and com-

merce. *Last Chance Dev. Partnership v. Kean,* 119 *N.J.* 425, 430, 575 *A.*2d 427 (1990). Therefore, the Waterfront Development Act does not authorize regulation of upland development which has no direct effect on navigable waterways. *Id.* at 436, 575 *A.*2d 427; *Long Beach Township v. New Jersey Dep't of Envtl. Protection,* 245 *N.J.Super.* 143, 146–49, 584 *A.*2d 820 (App.Div.1990).

The regulation of commercial development along navigable waterways pursuant to the Waterfront Development Act addresses different concerns than wetlands. However, this does not mean that every administrative regulation adopted under the purported authority of the Waterfront Development Act "has merely a tangential or ancillary effect upon a wetland and is predicated upon a different regulatory concern." Consequently, the specific regulation relied upon by appellants must be examined to determine whether it regulates wetlands "based upon 'wetlands' concerns alone."

■ *N.J.A.C.* 7:7E–3.27 sets forth a general prohibition against development of all kinds in wetlands, unless certain conditions are satisfied. This prohibition applies to all wetlands, without any showing that the development of a wetlands area will affect navigation and commerce along a navigable waterway and thus implicate the concerns of the Waterfront Development Act. Therefore, while *N.J.A.C.* 7:7E–3.27(b) may be validly applied to development affecting certain wetlands, such as those immediately adjoining navigable waterways, it may not be applied to an inland freshwater wetland which has no direct connection to a navigable waterway.[4]

---

[4]Our conclusion is limited to the regulation of freshwater wetlands under the authority of the Waterfront Development Act. We express no opinion as to the effect of the FWPA upon the regulation of wetlands under other legislation, such as the Coastal Area Facility Review Act, *N.J.S.A.* 13:19–1 to –21. See *NAIOP, supra,* 241 *N.J.Super.* at 154, 574 *A.*2d 514.

■ The UCUA's site contains seventeen isolated wetlands which covered less than half an acre and have no hydrologic connection to each other or to the Rahway River. Thus, a prohibition against the development of the UCUA's site due to the presence of these wetlands would be "based upon 'wetlands' concerns alone." *NAIOP, supra,* 241 *N.J.Super.* at 156, 574 *A.*2d 514. Therefore, under *N.J.S.A.* 13:9B–30, the FWPA and its regulatory scheme supersedes *N.J.A.C.* 7:7E–3.27 and provides the exclusive source of authority for state regulation of wetlands on the UCUA's site.

■ The FWPA provides that developments which were approved by the Army Corps of Engineers prior to the effective date of the FWPA, which was July 1, 1988, "shall be governed only by the Federal Act, and shall not be subject to any additional or inconsistent substantive requirements of [the FWPA]." *N.J.S.A.* 13:9B–4; *see also N.J.A.C.* 7:7A–2.7(g). On December 29, 1987, the Army Corps of Engineers granted a nationwide permit pursuant to 33 *U.S.C.A.* § 1344(e) and 33 *C.F.R.,* § 330 authorizing the UCUA to fill the wetlands on its site. Since this permit was obtained by the UCUA prior to the effective date of the FWPA, the UCUA is exempt under *N.J.S.A.* 13:9B–4 from any further regulation based on the presence of freshwater wetlands on the site.[5]

---

[5]The DEP stated in its brief opposing appellants' motion for stay in the Supreme Court that if the wetlands on the UCUA's site had been subject to regulation under the FWPA, the UCUA's proposal to fill them undoubtedly would have been approved. Under the DEP regulations adopted pursuant to the FWPA, a Statewide General Permit authorizing the filling of a wetland will be issued if an applicant shows that the wetland is not part of a surface water distributing system, consists of less than one acre, is not a wetland of exceptional resource value or a special aquatic site and has not been designated a priority wetland by the Environmental Protection Agency. *N.J.A.C.* 7:7A–9.2(a)(6). The seventeen isolated wetland pockets on the UCUA site total only 0.41 acres, have no hydrologic connection to each other or to the Rahway River, are not in State open waters and are neither exceptional resource nor EPA priority wetlands.

■ Finally, we note that the DEP found that the UCUA's planned public recreation strip along the part of its property adjoining the Rahway River complies with other DEP regulations governing waterfront development permits, including regulations specifically directed at promoting public access to the waterfront, *N.J.A.C.* 7:7E–8.11, and water dependent uses of waterfront property. *N.J.A.C.* 7:7E–3.23. The UCUA's compliance with these regulations satisfies the essential policies of the Waterfront Development Act. See *Last Chance Dev. Partnership v. Kean, supra.*

Accordingly, we reject appellants' challenges to the wetlands development permit issued to the UCUA and sustain the validity of that permit.