TATELBAUM, Trustee for the Trust Estate of Chuck and Bob's, Inc. *v.* THE COMMERCE INVESTMENT COMPANY

[No. 272, September Term, 1969.]

*Decided March 4, 1970.*

The cause was argued before HAMMOND, C. J., and McWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Charles M. Tatelbaum,* with whom were *Schimmel & Tatelbaum* on the brief, for appellant.

*Melvyn J. Weinstock,* with whom were *Weinberger & Weinstock* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

This case offers an almost classic example of the perils which are frequently the result of innovative draftsmanship. Maryland's General Assembly adopted the Uniform Commercial Code (the U.C.C.) in 1963, to become effective on 1 February 1964. It is now found in Maryland Code (1957, 1964 Repl. Vol.) Art. 95B. Although the Commission to Study and Report on the Uniform Commercial Code had filed a report recommending that The American Law Institute draft be adopted without change, the Legislature chose to make some 20 amendments, including a complete restructuring of § 9-401(1) of the U.C.C.

The Institute's draft of § 9-401(1), the section dealing with the place where financing statements are to be recorded, offered three alternative mechanisms:

"First Alternative Subsection (1)

(1) The proper place to file in order to perfect a security interest is as follows:

(a) when the collateral is goods which at the time the security interest attaches are or are to become fixtures, then in the office where a mortgage on the real estate concerned would be filed or recorded;

(b) in all other cases, in the office of the [Secretary of State].

### Second Alternative Subsection (1)

(1) The proper place to file in order to perfect a security interest is as follows:

(a) when the collateral is equipment used in farming operations, or farm products, or accounts, contract rights or general intangibles arising from or relating to the sale of farm products by a farmer, or consumer goods, then in the office of the .................... in the county of the debtor's residence or if the debtor is not a resident of this state then in the office of the ........................ in the county where the goods are kept, and in addition when the collateral is crops in the office of the ........................... in the county where the land on which the crops are growing or to be grown is located;

(b) when the collateral is goods which at the time the security interest attaches are or are to become fixtures, then in the office where a mortgage on the real estate concerned would be filed or recorded;

(c) in all other cases, in the office of the [Secretary of State].

### Third Alternative Subsection (1)

(1) The proper place to file in order to perfect a security interest is as follows:

(a) when the collateral is equipment used in farming operations, or farm products, or accounts, contract rights or general intangibles arising from or relating to the sale of farm products by a farmer, or consumer goods, then in the office of the ........................ in the county of the debtor's residence or if the debtor is not a resident of this state then in the office of the ........................ in the county where the goods are kept, and in addition when the collateral is crops in the office of the ........................... in the

county where the land on which the crops are growing or to be grown is located;

(b) when the collateral is goods which at the time the security interest attaches are or are to become fixtures, then in the office where a mortgage on the real estate concerned would be filed or recorded;

(c) in all other cases, in the office of the [Secretary of State] and in addition, if the debtor has a place of business in only one county of this state, also in the office of ...... .. ......... ... of such county, or, if the debtor has no place of business in this state, but resides in the state, also in the office of ....................... of the county in which he resides."

2 Hawkland, *A Transactional Guide to the Uniform Commercial Code* § 2.280202 (1964) at 615 explains the historical reasons for the alternatives:

"There is disagreement among scholars and commercial lawyers with respect to the best place to file the financing statement. Representatives of national distributors long have urged the adoption of 'central' filing under which the financing statement would be deposited with the secretary of state or some other state official at the state capital. Central filing has the advantage of making it easier and cheaper to acquire credit information, and of reducing the national distributors' concern over the possible existence of locally perfected security interests at the myriad county seats. On the other hand, most credit inquiries are made by banks and dealers who are entering into transactions with local people. These groups find local filing more convenient and less expensive and cumbersome than central filing.

"The draftsmen of the Code did not attempt to resolve this controversy. Instead they set out

in section 9-401 a series of alternatives from which the enacting states could select a system best suited to their own geography and policy."

The Commission made no choice among the three alternatives, but commenting on Article 9 of the U.C.C., said, at page 7 of its report:

"The clarity and precision achieved by this treatment of the subject will greatly simplify the planning and execution of secured transactions and minimize the legal hazards that now inhere in many arrangements."

As it turned out, this prediction was an overly optimistic one.

An examination of the legislative history sheds little light on how the change in § 9-401 (1) came about. The U.C.C. was introduced on 11 January 1963 as Senate Bill 77, and was referred to the Senate Committee on Judicial Proceedings. It was reported out on 14 February with some 20 amendments, one of which struck out "all of sub-section (1) of Section 9-401" and substituted the following:

"§ 9-401. Place of filing; erroneous filing; removal of collateral.

(1) The proper place to file in order to perfect a security interest is as follows:

(a) When the collateral is goods which at the time the security interest attaches are or are to become fixtures, then in the office where, and in the same records as, a mortgage on the real estate concerned would be indexed and filed or recorded.

(b) In all other cases in the office of the clerk of the circuit court of the county as follows: If the debtor is one or more resident individuals as distinguished from an organization (subsection (28) of § 1-201), then where he or each of them resides in this State. If the debtor is an

organization or is a non-resident individual then *in the county of the debtor's chief place of business* in this State, but if the debtor organization or non-resident individual debtor has no place of business in this State, then in the office of the State Department of Assessments and Taxation. In addition when the collateral is crops also in the office of the clerk of the circuit court in the county where the land on which the crops are growing or to be grown is located." (emphasis supplied).

It would appear that "chief place of business" is a concept borrowed from U.C.C. § 9-103(2) which is addressed to equipment used in multi-state operations. "Chief place of business" is not defined in § 9-103 or elsewhere in the U.C.C. Official Comment 3 to § 9-103 sheds some light, however:

" 'Chief place of business' does not mean the place of incorporation; it means the place from which in fact the debtor manages the main part of his business operations. That is the place where persons dealing with the debtor would normally look for credit information, and is the appropriate place for filing. * * * Doubt may arise as to which is the 'chief place of business' of a multi-state enterprise with decentralized, autonomous regional offices. A secured party in such a case may easily protect himself at no great additional burden by filing in each of several places."

It is against this background that we deal with the narrow issue before us. Sometime in 1966, Chuck and Bob's, Inc., a Maryland corporation, purchased from Neel Chevy-Olds, Inc., of Sykesville, Maryland, a 1966 Oldsmobile Toronado. Part of the purchase price, $3,404.75, was financed under a conditional contract of sale, which was ultimately assigned by Neel Chevy-Olds, Inc., to The

Commerce Investment Company (Commerce). At the time the Toronado was purchased, Chuck and Bob's, Inc., was operating a gasoline filling station in Randallstown, in Baltimore County, but its principal office, as identified by reports filed with the State Department of Assessments and Taxation, was at 902 West 36th Street, in Baltimore City, where the corporate records were kept and the bookkeeping was done. The conditional contract and the financing statement, however, gave Randallstown, which is in Baltimore County, as the address of the buyer and as the place where the car would be kept. Commerce recorded the financing statement in Baltimore County.

On 6 March 1968, Chuck and Bob's, Inc., entered into a deed of trust for the benefit of creditors. In due course, Commerce's effort to establish its position as a secured creditor was resisted by Chuck and Bob's trustee on the ground that the mandate of § 9-401(1) that the financing statement be recorded in the county where an organization has its "chief place of business" required that the financing statement be filed in Baltimore City, where Chuck and Bob's principal office was located. A report of the special master, which rejected this contention, was adopted by a decree of the Circuit Court of Baltimore City. This appeal followed.

We shall affirm, because we cannot accept the trustee's reading of § 9-401(1). Under Maryland law as it stood prior to the enactment of the U.C.C., a conditional contract of sale, when the vendee was a corporation, was required to be recorded where the corporate vendee had its "principal place of business," Code (1957) Art. 21 § 66. This was generally assumed to be the principal office of the corporation as reported to the State Department of Assessments and Taxation in response to the requirement of Code, Art. 23 § 8(a). *Stark v. Baltimore Soda Fountain Mfg. Co.,* 101 F. Supp. 842, 846, (D.Md. 1952).

We can only conclude that the Legislature, in using the phrase "chief place of business" in § 9-401(1) meant something other than the "principal place of business"

required by Art. 21 § 66, which had become equated with the "principal office" required by Code, Art. 23 § 8(a). We think that "chief place of business" as used in our § 9-401(1) means the county in which the corporate debtor conducts its greatest volume of business activity. If we recast Official Comment 3 to § 9-103(2) in a context appropriate to an inter-county operation, chief place of business does not mean the place of the principal office required by statute; it means the place where the main part of business operations is done, the place where persons dealing with the debtor would normally look for credit information.

In this case, because Chuck and Bob's only business activity was the operation of gasoline filling stations in Baltimore County, we conclude that the filing of the financing statement in Baltimore County fully complied with the mandate of § 9-401(1) and protected Commerce's interest as a secured creditor.

In so holding, we need not reach the question whether § 9-401(2) would have made an improper filing effective under the "good faith" clause of § 9-401(2).

We are impelled, however, to invite the attention of the Legislature and of the Bar to the fact that the form of § 9-401(1) adopted in Maryland has produced in the case of a corporation which operates entirely intrastate, but in more than one county, the same doubtful situation which the Official Comment recognizes in respect of a multi-state operation. Conceivably, the secured creditor might be faced with two virtually impossible choices: the task of determining the county from which the debtor derives its greatest revenues, or of filing the financing statement in every county in which the debtor does business. This is a problem which calls for prompt correction by legislative action.

*Decree affirmed, costs to be*
*paid by appellant.*