32 P.3d 647

**In re Attorney's Fees of Reinhard MOHR, Court–Appointed Counsel–Appellant in State of Hawai'i, Plaintiff–Appellee, v. Paul Powers, Defendant–Appellant.**

No. 21564.

Supreme Court of Hawai'i.

Sept. 11, 2001.

Richard Mohr, court-appointed counsel, on the writ.

Opinion of the Court by MOON, C.J.

On December 6, 1999, Reinhard Mohr petitioned this court for a writ of certiorari to review the Intermediate Court of Appeals' (ICA) order, filed November 23, 1999, summarily approving in part and denying in part Mohr's request for attorney's fees, pursuant to Hawai'i Revised Statutes (HRS) § 802–5 (1993).[1] Therein, the ICA denied Mohr's request for $1,412.00, granting instead the lesser amount of $292.00. In his petition, Mohr asserts that the partial denial of his fees was "arbitrary" and "not fair." For the reasons stated below, we reverse the ICA's November 23, 1999 order approving in part

and denying in part Mohr's request for attorney's fees. Furthermore, we hold that $614.00 (15.35 hours × $40.00 per hour), as opposed to the amount requested, is reasonable compensation for the services rendered in this appeal. Accordingly, we grant Mohr's request for fees in that amount.

## I.  BACKGROUND

Pursuant to HRS § 802–5, Mohr was appointed as appellate counsel for Paul Powers in *State v. Powers*, No. 21564, effective May 27, 1998. At the time of Mohr's appointment, Powers, appearing pro se, was in the process of appealing from a May 8, 1998 guilty conviction and sentence for promoting a dangerous drug in the third degree. Powers was sentenced to five years of probation, subject, *inter alia*, to a special condition of 122 days of incarceration with credit for time served. The notice of appeal was filed on May 20, 1998. Mohr was the eighth attorney, and the first appellate attorney, appointed to represent Powers since charges were filed on January 30, 1996.

Between May 28, 1998 and May 18, 1999, Mohr attempted to withdraw as counsel on at least two occasions. On May 18, 1999, in conjunction with presenting a stipulation for dismissal of appeal, Mohr filed the instant request for attorney's fees. On the same day, the stipulation to dismiss the appeal was filed as "not approved." Although initially denied, Mohr's motion to withdraw as counsel was granted on October 8, 1999, in light

---

1.  HRS § 802–5 provides in relevant part:

**Appointment of counsel; compensation.** (a) When it shall appear to a judge that a person requesting the appointment of counsel satisfies the requirements of this chapter, the judge shall appoint counsel to represent the person at all stages of the proceedings including appeal, if any. If conflicting interests exist, or if the interests of justice require, the court may appoint private counsel, who shall receive reasonable compensation for necessary expenses, including travel, the amount of which shall be determined by the court, and fees pursuant to subsection (b). All such expenses shall be certified by the court. Duly certified claims for payment shall be paid upon vouchers approved by the director of finance and warrants drawn by the comptroller.

(b) The court shall determine the amount of reasonable compensation to appointed counsel, based on the rate of $40 an hour for out-of-court

services, and $60 an hour for in-court services and with a maximum fee in accordance with the following schedule:

| | |
|---|---|
| (1) Any felony case | $3,000 |
| (2) Misdemeanor case—jury trial | 1,500 |
| (3) Misdemeanor case—jury waived | 750 |
| (4) Appeals to the supreme court or intermediate appellate court | 2,500 |
| (5) Petty misdemeanor case | 450 |
| (6) Any other type of administrative or judicial proceeding including cases arising under chapter 571 | 1,500 |

Payment in excess of any maximum provided for under paragraphs (1) to (6) may be made whenever the court in which the representation was rendered certifies that the amount of the excess payment is necessary to provide fair compensation and the payment is approved by the administrative judge of such court.

of Mohr's resignation from the practice of law in Hawai'i.

Mohr requests fees in the amount of $1,412.00 for 35.3 hours of services. However, the work sheets submitted by Mohr detail only 34.2 hours of services, consisting of 2 hours of client contact, 21.3 hours of research, and 10.9 hours of reading and drafting court documents. The ICA determined that Mohr's request for $1,412.00 was not reasonable and, by order filed November 23, 1999, approved fees in the amount of $292.00 for 7.3 hours of service. On December 6, 1999, Mohr applied for a writ of certiorari to review the ICA's decision, which this court granted.

## II. *DISCUSSION*

### A. *Appellate Jurisdiction*

Preliminarily, we must determine whether an ICA order granting or denying fees and/or costs to an attorney appointed to represent an indigent defendant under HRS § 802–5 is reviewable by this court. Absent jurisdiction, this court has no authority to act on the substantive issues posed by an appeal. *See, e.g., Wong v. Wong,* 79 Hawai'i 26, 29, 897 P.2d 953, 956 (1995) (noting that "in each appeal, the supreme court is required to determine whether it has jurisdiction") (quoting *Jenkins v. Cades Schutte Fleming & Wright,* 76 Hawai'i 115, 119, 869 P.2d 1334, 1338 (1994)).

HRS § 802–5(b), which provides for compensation to appointed counsel, does not contain provisions for the appeal of a fee order granting or denying such compensation. Therefore, the right of appeal, if any, must be found in some other statutory provision. *See In Re Tax Appeal of Lower Mapunapuna Tenants Ass'n,* 73 Haw. 63, 69, 828 P.2d 263, 266 (1992) (stating that "the right of appeal is 'purely statutory and ... therefore, the right of appeal is limited as provided by the legislature and compliance with the method and procedure prescribed by it is obligatory' "); *see also Dawson v. Lanham,* 53 Haw. 76, 84, 488 P.2d 329, 334 (1971) (Abe, J. dissenting) (noting that "it is a well-settled rule that the legislature may define and limit the right of appeal because the remedy of appeal is not a common law right and it exists only by authority of statutory or constitutional provisions") (citations omitted).

The statute providing for appeals from ICA decisions, HRS § 602–59 (1993 & Supp. 1999), provides in relevant part:

> (a) After issuance of a *decision* by the intermediate appellate court, a *party* may appeal *such decision* only by application to the supreme court for a writ of certiorari, the acceptance or rejection of which shall be discretionary upon the supreme court.

(Emphases added.)

In *State v. Przeradzki,* 6 Haw.App. 20, 709 P.2d 105 (1985), the ICA determined that, under HRS § 641–11 (providing for appeals from *final orders* of circuit courts by any aggrieved *party* ), a court-appointed attorney, as the "aggrieved party," has standing to appeal an order awarding attorney's fees under HRS § 802–5. *Id.* at 21, 709 P.2d at 107 (citing *Booker v. Midpac Lumber Co., Ltd.,* 2 Haw.App. 569, 636 P.2d 1359 (1981)), *rev'd on other grounds,* 65 Haw. 166, 649 P.2d 376 (1982). Applying *Przeradzki* analogously, ICA fee orders would be appealable under HRS § 602–59 if the attorney is a "party" and the order is a "decision."

Contrary to the holding in *Przeradzki,* a majority of federal circuit courts of appeal have determined that awards or denials of attorneys' fees for court-appointed attorneys are not appealable under the federal Criminal Justice Act (CJA), 18 U.S.C.A. § 3006A, which is similar to HRS § 802–5. The United States Court of Appeals for the Ninth Circuit, in *In re Baker,* 693 F.2d 925, 927 (9th Cir.1982), held that attorneys' fees orders under the CJA, although final, were not "decisions" within the meaning of that statute because: (1) the context of awarding attorneys' fees was not adversarial; (2) the decision to award fees was not outcome dependent; and (3) the collateral order doctrine applied only to "judicial" decisions and not to administrative acts. The Sixth Circuit agreed with the Ninth Circuit in *United States v. Stone,* 53 F.3d 141 (6th Cir.1995). The Sixth Circuit also pointed out that the Seventh, Tenth, and Eleventh Circuits have each held that requests for attorneys' fees

under the CJA are non-appealable administrative acts. *Id.* at 142–43.

As noted by the Ninth Circuit in *In re Baker,* we recognize that attorneys' fees requests under HRS § 802–5 do not involve an adversarial process and that an award or denial of fees is not dependent upon the outcome of the case. The award of fees involves an act that is collateral to the criminal appeal before the court. It requires the court to certify that fees paid out of state funds to court-appointed attorneys as compensation for services rendered are reasonable. If the court determines that a fee request is properly documented and is reasonable, based on the statutory criteria and the services rendered, the request is granted; no opposition is permitted or appropriate.

■ However, we also recognize that every review of a fee request requires an analysis of evidence and an application of statutory standards. Such analysis and application is a judicial process like any other original proceeding in which evidence is taken and law is applied. It is an adjudication of the appointed attorney's private, statutory right to be compensated for the work the attorney has done, and the attorney bears the burden of adducing evidence sufficient to justify his or her claim. *Cf. Atkinson–Baker & Associates, Inc. v. Kolts,* 7 F.3d 1452 (9th Cir.1993) (noting that judicial acts are those involving the "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights") (citing *Antoine v. Byers & Anderson,* 508 U.S. 429, 435, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993)) (some citations omitted). "Administrative acts are, among others, those 'involved in supervising court employees and overseeing the efficient operation of a court.'" *Atkinson–Baker,* 7 F.3d at 1454 (citing *Forrester v. White,* 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)).

■ Based on our analysis of the foregoing, we hold that the grant or denial of attorney's fees under HRS § 802–5 is a judicial act and is, therefore, subject to review. As a judicial act, an ICA order denying attorney's fees in part or in full is a "decision" for purposes of appeal under HRS § 602–59, and the attorney requesting compensation is a "party." *See* HRS § 602–59 (providing that "a party" may appeal a "decision" of the ICA); *Cf. Przeradzki,* 6 Haw. App. at 21, 709 P.2d at 107 (holding that, under HRS § 641–11, a court-appointed attorney was an "aggrieved party" for the purpose of appealing from a "final order" of the circuit court).

## B. *Standard of Review*

■ This court generally reviews an award or denial of attorney's fees under the abuse of discretion standard. *Canalez v. Bob's Appliance Serv. Center, Inc.,* 89 Hawai'i 292, 299, 972 P.2d 295, 302 (1999) (citing *Eastman v. McGowan,* 86 Hawai'i 21, 27, 946 P.2d 1317, 1323 (1997); *Coll v. McCarthy,* 72 Haw. 20, 28, 804 P.2d 881, 887 (1991)). Under HRS § 802–5, requests for fees should be granted if the court certifies that the requesting attorney has met his or her burden to prove that the fees requested are for hours expended and that the hours expended were "reasonable" for the services rendered. Thus, the certifying court must exercise discretion in determining whether fees are reasonable. Accordingly, we hold that requests for fees by court-appointed attorneys under HRS § 802–5 are reviewable under the abuse of discretion standard. "An abuse of discretion occurs where the … court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Canalez,* 89 Hawai'i at 299, 972 P.2d at 302 (citing *State ex rel. Bronster v. United States Steel Corp.,* 82 Hawai'i 32, 54, 919 P.2d 294, 316 (1996).)

## C. *Reasonable Compensation*

■ Finally, we turn to the substantive issue whether Mohr was denied the reasonable compensation to which he was entitled. HRS § 802–5 provides that court-appointed private counsel shall receive reasonable compensation for fees, the amount to be determined and certified by the court, based on the rate of $40.00 an hour for out-of-court services, generally subject to a maximum fee of $2,500.00 for appeals to the supreme court or intermediate appellate court. Payment in excess of the maximum provided may only be

made when the court in which the representation was rendered certifies that the amount of the excess payment is necessary to provide fair compensation and that the payment is approved by the administrative judge of such court. *See* HRS § 802–5(b). Every review of a fee request requires a conscientious and dispassionate analysis of the evidence presented by an attorney in support of his or her claim. As previously stated, such analysis is a judicial process like any other original proceeding in which evidence is taken and law is applied. Therefore, in reviewing Mohr's request, we consider the time sheets submitted by Mohr, including the description of services performed. We also examine documents in the record for evidentiary support that the hours spent reasonably reflect the work performed.[2]

As previously stated, Mohr requested compensation in the amount of $1,412.00 for 35.5 hours of out-of-court services. Pursuant to Hawai'i Rules of Appellate Procedure (HRAP) Rule 53(a), Mohr specifically requested compensation for: (1) 2.0 hours of "client contact"; (2) 21.3 hours for "research"; and (3) 10.9 hours for "other," which included reading and drafting court documents.[3] The ICA order granted Mohr's request for 2.0 hours of client contact, but reduced compensation for "research" to 2.2 hours and compensation for "writing and reading" to 3.1 hours. For the reasons that follow, we hold that the ICA abused its discretion in granting Mohr compensation for 7.3 of the 35.3 hours requested.

■ In reviewing Mohr's time sheet and request, we note that the total amount requested was greater than the number of hours documented by 1.1 hours. Moreover,

Mohr requested 3.0 hours of compensation related to motions to extend the time to file the opening brief, an order to show cause as to why Mohr failed to timely request transcripts, and letters from the clerk of the court informing Mohr that the time to file the opening brief had expired—all of which were due to Mohr's lack of diligence. It would be patently unreasonable to compensate a court-appointed attorney for work not documented or for time spent on motions, responses to show cause orders, or letters issued by this court that were a direct result of the attorney's failure to represent his or her client in a timely and professional manner.

■ Furthermore, we have reviewed the quality and quantity of documents submitted to this court by Mohr on behalf of Powers during his appointment in this case in order to determine whether the ICA's award of 7.3 hours is reasonable compensation for the services Mohr actually performed. The overall quality of the documents filed by Mohr on behalf of Powers is inconsistent with the amount of time Mohr claims to have spent in researching and drafting them. Moreover, Mohr's worksheet contain large quantities of time for relatively simple tasks. For example, Mohr documented 3.7 hours for the preparation of Powers's one-page statement of jurisdiction which, substantively, consisted of the following:

> Comes now Defendant–Appellant, through counsel, and pursuant to Rule 12.1, H.R.A.P., and for his Statement Of Jurisdiction submits the following:
>
> 1. The jurisdiction of this Court is based on Rule 3, H.R.A.P., and H.R.S. 641–11.

---

2. Mohr's petition for writ of certiorari contained a number of averments that were seemingly designed to invoke the sympathy or favor of the court in its review of the reasonableness of the fees. For example, as noted by Justice Acoba in his concurring and dissenting opinion, *see* J. Acoba, concurring and dissenting op. at 14, n. 1 & n. 3, 32 P.3d at 660 n. 1 & n. 3, Mohr stated that he submitted a "bare bones" request because he was in "desperate need of income to pay his son's tuition," that he provided the defendant with "substance abuse counseling" even though "he would not be paid for it," and that the defendant in this case was possibly the "most difficult client" he had ever experienced in his

"almost 25 years of practice." We do not consider such matters because they are irrelevant to the determination of whether the fees requested are reasonable.

3. We note that Mohr's request and declaration actually indicates 1.8 hours as "client contact," 22.8 hours as "research," and 10.7 hours as "other." However, the hourly work sheets attached to his request document only the number of hours indicated above. Where discrepancies arise between the general declaration and the specifically documented hours on the work sheet, we rely on the documented work sheet hours.

2. A timely Notice of Appeal was filed on May 20, 1998. (R.A. Vol. II at 111–12) from the Judgement filed on May 8, 1998. (R.A. Vol. II at 90–95)

3. Defendant pled guilty to one count of promoting dangerous drug, third degree (H.R.S.712–1243) and was sentenced to an open five year term of incarceration (R.A., Vol. II at 90–95) which he is presently serving.

Mohr's entire opening brief is less than three pages long, consists of little more than one page of a partial procedural history, and is devoid of any material facts. In the argument section, Mohr "concurs with the State ... that the instant appeal[ ][is] interlocutory in nature" and that "[t]he State should have moved long ago to dismiss the instant appeal[ ] [because Powers had not obtained leave of court as required under HRS § 641–17]." Mohr then asserts that, in the alternative, he would file an "Anders brief"[4] because "[Mohr] finds the issue Powers has urged on appeal without merit and wholly frivolous." Ultimately, Mohr ends his "argument" with a request to withdraw as counsel.

■■■ It has been and continues to be the policy of this court not to permit Anders briefs. We think the better policy is to require counsel to remain an advocate for the client. In furtherance of this policy, this court will not sanction a court-appointed attorney if, after taking into account the totality of the circumstances, arguments raised reflect zealous advocacy on behalf of the client. This policy reposes advocacy with counsel and judging with the court. Notwithstanding that policy, and presumably because the policy has not heretofore been published, the ICA cited to *Anders* in *Carvalho v. State*, 81 Hawai'i 185, 192, 914 P.2d

1378, 1385 (App.1996), stating that, "[e]ven if trial counsel, after personal and conscientious examination of the record, concluded that ... an appeal would be frivolous, he would still be required to file an 'Anders brief' on Petitioner's behalf before filing a motion to withdraw[.]" To the extent that *Carvalho* may be viewed as conflicting with this court's policy regarding Anders briefs, it is hereby overruled.

Due to this court's policy regarding Anders briefs, as well as Mohr's failure to present any argument whatsoever on Powers's behalf, Mohr's opening brief was stricken on January 25, 1999. Although the amended brief reflects some research in the form of string citations to bare assertions, no legal analysis or argument is presented. We note that Mohr's work sheets often indicated such vague descriptions as "research o.b." or "draft o.b." Although we recognize that providing adequate representation can include research conducted on potential issues not ultimately presented in the final brief, we cannot speculate as to what those potential issues might have been, and, in the absence of a more specific description, we are left with only the evidence available in the record, *i.e.*, the actual documents filed, to determine whether the compensation requested is reasonable. Given the record in this case, it would be patently unreasonable to grant Mohr the full number of hours requested in conjunction with the research and drafting of the opening brief and amended opening brief.

■■■ Notwithstanding the foregoing, and the fact that the remaining hours documented by Mohr are equally susceptible to reduction, the number of hours for which the ICA granted compensation was also unreasonable. For example, the order indicates that Mohr

---

**4.** In *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, *reh'g denied*, 388 U.S. 924, 87 S.Ct. 2094, 18 L.Ed.2d 1377 (1967), the United States Supreme Court concluded, in part, that a California procedure that allowed defendants' appellate counsel to submit a no-merit letter instead of an advocate's brief was insufficient. The court noted that counsel's

role as advocate requires that he support his client's appeal to the best of his ability. Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request

permission to withdraw. That request must, however, be *accompanied by a brief referring to anything in the record that might arguably support the appeal*. A copy of counsel's brief should be furnished the indigent and time allowed [for] him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous.

*Id.* at 744, 87 S.Ct. 1396 (emphasis added). The brief described by the Supreme Court above is commonly known as an "Anders brief."

was awarded 2.2 hours for research. Under the category "research" Mohr documents the following tasks:

| | |
|---|---|
| 6/2/98 | Read and research three (3) volumes of trial court files—take notes |
| 6/3/98 | Continue research trial court files |
| 7/7/98 | Supreme court file room to research court file/record on appeal |
| 7/7/98 | Research and draft statement of jurisdiction |
| 7/8/98 | Research S.C. file for court reporters for transcripts for appeal |
| 7/8/98 | Research trial court file and draft request for transcripts |
| 7/13/98 | Research/draft Defendant's statement of jurisdiction |
| 10/9/98 | Research O.B. [Opening Brief] |
| 12/28/98 | Read/research A.B. [Answering Brief] |
| 2/19/99 | Research amended O.B. |

All of the foregoing tasks are necessary to provide adequate appellate representation. Mohr attested to the fact that he performed the above tasks in his fee request, and we have no basis for determining that these tasks were not completed. Thus, the determination of reasonableness must be based solely on an assessment of whether the number of hours documented is reasonable for the tasks performed. We agree with the ICA that the 21.3 hours requested is unreasonable in this case. However, based on our review of the record in this appeal, it is equally unreasonable to expect an appellate attorney who was unfamiliar with the case to review a three-volume (875 page) trial court record[5] and a supreme court record, draft a transcript request and a statement of jurisdiction, and research the opening brief, amended opening brief, and the answering brief, all in 2.2 hours. Accordingly, we have no choice but to conclude that the ICA abused its discretion in granting Mohr only 2.2 of the 21.3 hours requested for research.

◼ Having thoroughly reviewed the record on appeal, Mohr's request for fees, and the supporting documentation attached

thereto, we believe that Mohr has demonstrated that 15.35 hours is reasonable compensation for the services he performed in this appeal. Accordingly, we grant Mohr's request for fees in the amount of $614.00 (15.35 hours × $40.00 per hour).

◼ Finally, although concurring with the result of this case, both Justice Ramil and Justice Acoba write separately to express their concerns regarding the inadequate hourly rate paid to court-appointed private counsel under HRS § 802–5. While Justice Ramil "urge[s] the Hawai'i legislature to increase the hourly rate paid to court-appointed private counsel under HRS § 802–5," J. Ramil, concurring op. at 12, 32 P.3d at 658, Justice Acoba opines that "it is incumbent upon the Hawai'i State Bar Association to ... [work] toward[s] revision of the appointed counsel fee schedule." J. Acoba, concurring and dissenting op. at 16, 32 P.3d at 662. The concurrences filed in this appeal compel us to state that, although we might agree with Justice Ramil's and Justice Acoba's opinions on this matter, this appeal is not the appropriate forum for expressing them.

First, the task before us in this appeal is solely to review the appropriateness of the ICA's denial of fees to Mohr based on the reasonableness of the fees requested and the services performed. As stated previously, Mohr requested compensation in the amount of $1,412.00 for 35.5 hours of services rendered *at a rate of $40.00*. As is clear from our analysis, the disposition of this certiorari proceeding requires nothing more than a straightforward assessment of whether the amount approved by the ICA is reasonable in light of the representation afforded. Therefore, the reasonableness of the hourly rate is not relevant to the outcome of this appeal.[6]

---

5. We note that the three volume record in this case contained numerous documents that were either irrelevant for the purposes of the appeal or duplicative (*e.g.*, motions to withdraw and/or substitute counsel, an extraordinary number of motions for continuances, and requests for fees from Powers's numerous appointed attorneys). Additionally, this case was not extraordinarily complex and involved very typical pretrial motions. These factors, however, do not alter our ultimate conclusion regarding the ICA's determination.

6. Justice Acoba states:
   [W]here it becomes apparent that the proper administration of justice may suffer from inadequate funding and *that issue is germane, as it is here*, to the case before us, it is our obligation, if not duty, to [address it].
   J. Acoba, concurring and dissenting op. at 16, 32 P.3d at 662. The implication of the above statement is that the reasonableness of the hourly rate is somehow "germane" to the number of expended hours for which Mohr should be compensated. *Id.* However, Justice Acoba has failed

■ Second, where an issue—such as the reasonableness of the hourly rate paid to court-appointed attorneys—has not been raised in an appeal, it is more appropriate for members of the Bar or the general public to lobby the legislature than for this court to do so in the guise of a judicial disposition. Moreover, this court cannot overcome the limitations of the present judicial forum by, in effect, lobbying the members of the Hawai'i State Bar to, in turn, lobby the legislature.

In defending the use of this appeal to express his opinion regarding the inadequacy of the hourly rate, Justice Ramil cites to eight cases as "historical" examples of "courts ... not [having] hesitated to call legislative attention to statutes in need of amendment." J. Ramil, concurring op. at 13, 32 P.3d at 659. However, the cited cases are inapposite because each called to the legislature's attention a statutory issue *that was directly relevant to the resolution of the case.*

For example, in *Mitchell v. State, Dept. of Educ.,* 85 Hawai'i 250, 942 P.2d 514 (1997), the issue was "whether an employee's stress-related injury resulting from disciplinary action taken by the employer in response to an employee's misconduct is a compensable injury **under HRS § 386-3 (1985)**." *Mitchell,* 85 Hawai'i at 254, 942 P.2d at 518 (bold emphasis added). This court concluded that section 386-3 did not exclude such injuries and mentioned that the legislature could amend the section if it so chose.

Similarly, the issue in *Brogan v. United States,* 522 U.S. 398, 118 S.Ct. 805, 139 L.Ed.2d 830 (1998) (Ginsburg, J., concurring) was

whether there is an exception to criminal liability under 18 U.S.C. § 1001 for a false statement that consists of the mere denial of wrongdoing, the so-called "exculpatory no." Title 18 of the U.S.C., § 1001, prohibits the making of a false statement within the jurisdiction of a federal agency. A majority of the United States Supreme Court concluded that there was no exception. Justice Ginsburg agreed but wrote separately "to call attention to the extraor-

dinary authority Congress, *perhaps unwittingly,* has conferred on prosecutors to manufacture crimes."

*Brogan,* 522 U.S. at 408, 118 S.Ct. 805 (emphasis added).

As explained previously, the issue in the case at bar is the reasonableness of the fees requested with respect to the services performed—***NOT** the reasonableness of the hourly rate.* Stated differently, Mohr has appealed only the application of the statute to his request; he has not challenged the statutory rate to be applied. Because all of the cases cited by Justice Ramil called to the legislature's attention a statutory issue that was directly relevant to the case, they are clearly distinguishable from the situation here. Accordingly, Justice Ramil's citation to *Brogan, Mitchell,* and the other six cases is not persuasive. The cases cited by Justice Acoba in support of calling the hourly rate to the attention of the Bar are similarly unpersuasive. *See* J. Acoba, concurring and dissenting op. at 16–17, 32 P.3d at 662–663. Moreover, we believe that there is an important distinction between calling attention to statutory questions or conflicts raised in cases and lobbying for statutory amendments consistent with the court's point of view.

■ Prudential rules of judicial self-governance properly limit the role of the courts in a democratic society. *Cf. Trustees of OHA v. Yamasaki,* 69 Haw. 154, 171, 737 P.2d 446, 456 (1987); *Life of the Land v. Land Use Commission,* 63 Haw. 166, 172, 623 P.2d 431, 438 (1981) (citing *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). One such prudential rule is that "the use of judicial power to resolve public disputes ... should be limited to those questions capable of judicial resolution and presented in an adversary context." *Yamasaki,* 69 Haw. at 171, 737 P.2d at 456 (citation omitted). Another such rule is that, "even in the absence of constitutional restrictions, [courts] must still carefully weigh the wisdom, efficacy, and timeliness of an exercise of their power before acting, *especially*

to explain how the administration of justice has suffered from inadequate funding *in this case.*

Without making that connection, we fail to see the relevance of the hourly rate.

*where there may be an intrusion into areas committed to other branches of government."* *Id.* (emphasis added) (citation omitted). Although, generally, issues concerning prudential rules of self-governance arise in cases where justiciability is at issue, self-governance and the proper role of the courts preclude this court not only from considering a case, but also from considering any issue that is not properly before it. We do not have the prerogative, as Justice Acoba asserts, to "discharge ... our individual judicial obligations" in "our written opinion[s]," *see* J. Acoba, concurring and dissenting op. at 17, 32 P.3d at 663, *where the case on appeal does not bring the issue squarely before this court.* To refrain from doing so represents an exercise in judicial self-restraint, not a shirking of judicial responsibility.

■ James Madison, speaking on the notion of checks and balances in a democratic society, wrote that, "[i]n framing a government which is to be administered by [the people] over [the people], the great difficulty lies in this: You must first enable the government to controul [sic] the governed; and in the next place, oblige it to controul itself." *The Federalist Papers* No. 51 (J. Madison). Although judicial review serves as a check on the unconstitutional exercise of power by the executive and legislative branches of government, "the only check upon [the judicial branch's] exercise of power is [its] own sense of self-restraint." *U.S. v. Butler*, 297 U.S. 1, 78–79, 56 S.Ct. 312, 80 L.Ed. 477 (1936) (Stone, J., dissenting). For that reason, alone, judicial self-restraint is surely an implied, if not an expressed, condition of the grant of authority of judicial review. Justice

Ramil's and Justice Acoba's decision to utilize the disposition of this case to urge a statutory amendment to the hourly rate is, in our view, in complete disregard of that implied condition.

Lastly, we note that, despite Justice Acoba's assertion that "no more appropriate avenue for the discharge of our individual judicial obligations exists than through our written opinion[s]," *see* J. Acoba, concurring and dissenting op. at 17, 32 P.3d at 663, the members of this court are not limited to their individual written opinions in meeting their judicial obligations. The Revised Code of Judicial Conduct (the Code) provides that a judge may appear at a public hearing before an executive or legislative body on matters concerning the law, the legal system, and the administrative of justice. The Code also provides that a judge may serve on a governmental committee or commission or other governmental position that is concerned with issues of fact or policy on matters regarding the improvement of the law, the legal system, or the administration of justice. Clearly, more appropriate avenues than evangelizing-by-opinion are indeed available.[7] We agree with Justice Acoba that "it is our obligation, if not [our] duty to make known" any barriers to the proper administration of justice. J. Acoba, concurring and dissenting op. at 16, 32 P.3d at 662. However, we believe equally that it is our duty to apply self-restraint in the exercise of judicial authority. Because the issue raised in this appeal is solely the reasonableness of the fees requested based on the services performed—as opposed to the reasonableness of the statutory hourly rate— *and* other avenues are available to "make

---

7. We note that, in the 2001 Regular Session of the Hawai'i State Legislature, three separate bills were introduced which, if passed, would effectively increase the hourly rate provided in HRS § 802–5. *See* SB 1296, 21st Leg., 1st Reg. Sess. (2001); SB 1273, 21st Leg., 1st Reg. Sess. (2001); HB 1516, 21st Leg. Sess. (2001). The Judiciary, through its Administrative and Deputy Directors, submitted written and oral testimony in strong support of two of the three bills, as did the Office of the Public Defender, the Hawai'i Association of Criminal Defense Lawyers, and concerned individuals. *See* SB 1296, Sen. Stand. Com. Rep. No. 213; SB 1296, Hse. Stand. Comm. Rep. Nos. 1011 and 1408; HB

1516, Hse. Stand. Com. Rep. No. 190. All three bills were carried over to the 2002 Regular Session. *See* Hawai'i State Legislature Website, Status & Documents (visited Aug. 6, 2001) <http://www.capitol.hawaii.gov>. The foregoing demonstrates that appropriate avenues are not only available, but are currently being pursued. Thus, there is little justification for Justices Ramil and Acoba to utilize this appeal as an opportunity to place their individual imprimaturs on matters already supported by the judiciary and presently before the legislature. Furthermore, the fact that the bills have been carried over to the next legislative session underscores the need for exercising judicial restraint.

known" the effect that the hourly rate may have on the administration of justice, this appeal is not an appropriate forum for addressing the hourly rate.

### III. CONCLUSION

Based on the foregoing, we hold that: (1) an ICA order denying in part or in full attorneys fee's and costs under HRS § 802–5(b) are appealable under HRS § 602–59 (1993 & Supp.1999); (2) such orders are collateral orders and may be reviewed without regard to the pendency of the underlying case; (3) consistent with this court's long-held policy, court-appointed appellate attorneys are not permitted to file "Anders briefs" [8] and, to the extent that *Carvalho v. State*, 81 Hawai'i 185, 914 P.2d 1378 (App. 1996), conflicts with that policy, it is hereby overruled; (4) the ICA abused its discretion in granting Mohr only $292.00 in attorney's fees; and (5) fees in the amount of $614.00 (15.35 hours × $40.00 per hour), as opposed to the amount requested, are reasonable. Accordingly, we reverse the ICA's order and grant Mohr fees in the amount of $614.00.

Concurring Opinion by RAMIL, J.

I agree with the majority's holding in Part II.A. that an ICA order denying in part or in full attorneys' fees and costs under HRS § 802–5(b) is appealable under HRS § 602–59 as a collateral order. *See* majority, at 4, 32 P.3d at 650. I also agree that the ICA abused its discretion in granting Mohr only 2.2 of the 21.3 hours requested for research. *See* majority at 8, 32 P.3d at 654. I write separately, however, to express my concern about the inadequate hourly rate paid to court-appointed private counsel under HRS § 802–5. In my view, the current rate—far below the existing federal rate—could adversely affect the right to indigent criminal defendants to adequate representation.

In Hawai'i's state courts, court-appointed private counsel receive reasonable compensation for fees, based on the rate of $40.00 an hour for out-of-court services, with a maximum fee of $2,500.00 for appeals to the supreme court or the ICA. *See* HRS § 802–5. In contrast, in the federal system in Hawai'i, private attorneys appointed under the Criminal Justice Act (CJA), 18 U.S.C. § 3006A,[1] are "reimbursed for expenses reasonably incurred" at the rate of $75.00 an hour for both in-court and out-of-court work, with a maximum fee of $2,500.00 for appeals.[2]

Under article I, section 14 of the Hawai'i Constitution,[3] indigent criminal defendants are guaranteed the assistance of appointed

---

**8.** *See supra* note 4.

**1.** 18 U.S.C. 3006A provides in pertinent part:

(d) Payment for representation. (1) Hourly rate. Any attorney appointed pursuant to this section or a bar association or legal aid agency or community defender organization which has provided the appointed attorney shall, at the conclusion of the representation or any segment thereof, be compensated at a rate not exceeding $60 per hour for time expended in court or before a United States magistrate and $40 per hour for time reasonably expended out of court, unless the Judicial Conference determines that a higher rate of not in excess of $75 per hour is justified for a circuit or for particular districts within a circuit, for time expended in court or before a United States magistrate and for time expended out of court. The Judicial Conference shall develop guidelines for determining the maximum hourly rates for each circuit in accordance with the preceding sentence, with variations by district, where appropriate, taking into account such factors as the minimum range of the prevailing hourly rates for qualified attorneys in the district in which the representation is provided and the recommendations of the judicial councils of the circuits.... Attorneys shall be reimbursed for expenses reasonably incurred, including the costs of transcripts authorized by the United States magistrate or the court.

(2) Maximum amounts.... For representation of a defendant in an appellate court, the compensation to be paid to an attorney or to a bar association or legal aid agency or community defender organization shall not exceed $2,500 for each attorney in each court....

**2.** Prior to January 1, 2000, court-appointed private attorneys in Hawai'i's federal courts received $70.00 an hour for both in-court and out-of-court services. In the districts of Arizona, Hawai'i, Nevada and Oregon, the Administrative Office of the United States Courts increased the hourly rates by $5.00 an hour for work performed on or after January 1, 2000.

**3.** Article I, section 14 of the Hawai'i Constitution provides in pertinent part that "[t]he State shall provide counsel for an indigent defendant charged with an offense punishable by imprisonment."

counsel. In accordance with that mandate, HRS § 802–5 "provide[s] for the appointment of private attorneys to represent indigent criminal defendants[.]" *See* Stand. Comm. Rep. No. 4, in 1981 Special Session Senate Journal, at 27 ("The purpose of this bill is to provide for the appointment of private attorneys to represent indigent criminal defendants when the public defender is unable to do so due to a conflict of interest or when the interests of justice so require. The bill also establishes maximum fees payable to, and provides for the payment of necessary expenses incurred by, the appointed attorney.")[4] As other jurisdictions have recognized, providing compensation to appointed counsel aids in fulfilling the primary goal of providing competent, diligent, and capable representation to indigent criminal defendants. *See United States v. Tutino*, 419 F.Supp. 246, 253 (S.D.N.Y.1976) (The purpose of the federal CJA is to assure indigent defendants "their constitutional right of adequate representation by competent counsel, and to ease the burden on those lawyers who, as a public service, voluntarily and without compensation gave of their professional skill in the defense of indigents."); *United States v. Owens*, 256 F.Supp. 861, 863 (W.D.Pa. 1966) ("The salutary purpose of the Act was to provide adequate legal representation to defendants otherwise unable to employ counsel, and that in providing for compensation to the attorneys appointed under the Act, Congress sought to insure that experienced, capable members of the bar could be called upon without causing them undue financial sacrifices."); *United States v. Bailey*, 581 F.2d 984, 989 (D.C.Cir.1978) (The Sixth Amendment "guarantees to indigents accused in a federal criminal prosecution not just the 'mere formal appointment' of someone who happens to be a lawyer but more critically[,] legal assistance that is reasonably diligent, conscientious and competent. Clearly, then, courts are to interpret the [CJA] to assure competent representation of indigent defendants[.]") (Citations omitted.); *Miranda v. United States*, 455 F.2d 402, 404 (2d Cir.) ("Section 3006A of Title 18 is concerned with the broad topic of 'adequate representation of defendants.' Its primary focus is on providing adequate counsel for trials on substantive offenses.") (Quoting 116 Cong. Rec. 34809–16 (1970) (remarks of Representatives Kastenmeier, Poff, et al.)), *supplemental opinion*, 458 F.2d 1179 (2d Cir.), *cert. denied*, 409 U.S. 874, 93 S.Ct. 207, 34 L.Ed.2d 126 (1972).

In my view, the patently inadequate hourly rate paid to state court-appointed private counsel is endangering the right of indigent criminal defendants to adequate representation. The current rate does little to encourage private counsel to participate enthusiastically in the defense of indigent criminal defendants. At the existing rate, competent private counsel may not feel it worthwhile to accept court appointments. The interests of indigent criminal defendants would be better served if capable lawyers can be relied upon—without excessive financial sacrifice—to provide competent, skillful representation.

To this end, I strongly urge the Hawai'i legislature to increase the hourly rate paid to court-appointed private counsel under HRS § 802–5. As the United States Court of Appeals for the District of Columbia Circuit recognized, "[o]nly if the practicing bar is encouraged to participate broadly and enthusiastically in the defense of indigent criminal defendants can the promise of [HRS § 802–5] ever become reality." *Bailey*, 581 F.2d at 989.

Finally, I note the Majority's objection to my concurrence. However, having carefully weighed the "wisdom, efficacy, and timeliness" of writing separately, *see Trustees of OHA v. Yamasaki*, 69 Haw. 154, 171, 737 P.2d 446, 456 (1987), I am compelled to express my belief that the unreasonably low

---

**4.** In 1987, the legislature recognized the inadequate compensation rates paid to court-appointed private counsel and raised, *inter alia*, the out-of-court hourly rate from $30.00 to $40.00 an hour. *See* Stand. Comm. Rep. No. 234, in 1987 Senate Journal, at 988 ("The purpose of this bill is to raise the amount of compensation to appointed counsel for legal representation of indigent criminal defendants. Your Committee has received testimony that the current compensation rates are below those provided in the Federal system, and fails to provide reasonable compensation in extended or complex criminal litigation.")

rate of compensation currently authorized by HRS § 802-5 imperils the right—enshrined in article I, section 14 of the Hawai'i Constitution—of indigent defendants to receive competent counsel. As such, I strongly disagree with the Majority's suggestion that my decision to voice legitimate concerns regarding the administration of justice in Hawai'i jeopardizes this state's democratic system of government. Indeed, I deem it my duty.

I also note the Majority's assertion that the sole issue before the court is to review the ICA's denial of attorneys' fees and that, while it might agree with the views expressed by Justice Acoba and myself, "this appeal is not the appropriate forum for expressing them." Majority at 8-9, 32 P.3d at 654-655. Historically, however, courts—this court included—have not hesitated to call legislative attention to statutes in need of amendment, modification or repeal. Quite recently, for example, in *Mitchell v. State of Hawai'i, Department of Education*, 85 Hawai'i 250, 942 P.2d 514. (1997), Chief Justice Moon authored a unanimous opinion in which we suggested that the Hawai'i legislature might want to consider certain amendments to Hawaii's Workers' Compensation Law.[5] Courts across the nation do likewise, and not infrequently. *See, e.g., Brogan v. United States*, 522 U.S. 398, 408-18, 118 S.Ct. 805, 139 L.Ed.2d 830 (1998) (Ginsburg, J., concurring) (writing separately to draw Congress' attention to legislation it might wish to amend); *Rockford Township v. City of Rockford*, 608 N.W.2d 903, 909 (Minn.Ct.App. 2000) ("invit[ing] the legislature's attention" to the absence of standards in certain legislation); *Black v. Allstate Ins. Co.*, 274 A.D.2d 346, 711 N.Y.S.2d 15, 16 (N.Y.App.Div.2000) (while not passing on the issue, calling the legislature's attention to the fact that a statute needs to be amended); *Carter v. Continental Land Title Co.*, 233 Cal.App.3d 1597,

285 Cal.Rptr. 413, 415 n. 4 (1991) ("We invite the Legislature's attention to this problem."); *Devins v. Borough of Bogota*, 124 N.J. 570, 592 A.2d 199, 204 (1991) (inviting legislative attention to certain statutes that the legislature may want to amend in light of the decision); *Rogers v. Miles Laboratories, Inc.*, 116 Wash.2d 195, 802 P.2d 1346, 1347 (1991) (calling the legislature's attention to its holding and suggesting that the legislature may want to consider amending the statute); *People v. Rogers*, 197 Ill.App.3d 722, 144 Ill.Dec. 156, 555 N.E.2d 53, 55 (1990) (calling legislature's attention to statute in need of clarification). Accordingly, I do not believe that my concurrence departs so dramatically from prudential rules of self-governance. To the contrary, I am merely calling attention to an issue that I deem important to the administration of justice here in Hawai'i.

For the foregoing reasons, I concur.

**Opinion of ACOBA, J., concurring in part and dissenting in part:**

I agree that there was an abuse of discretion in reducing Petitioner's request for attorneys' fees of $1,412.00 to $292.00 because, in my view, the latter amount fails to adequately compensate Petitioner for legal services rendered. Having advocated the award of $614.00, I have no objection to the adoption of that amount by the majority, but I do not concur in the majority's characterization of Petitioner's efforts. Finally, I believe the effective administration of criminal justice requires that the hourly remuneration for court appointed counsel be increased.

**I.**

Petitioner claims he made a "bare bones" request without "detail[ing] all the time [he] spent representing [his client]" in hope of

---

5. The sole issue on appeal in *Mitchell* was whether the Labor and Industrial Relations Appeals Board's (the Board) determination that the claimant's injury was compensable was erroneous. 85 Hawai'i at 254, 942 P.2d at 518. This court concluded that the Board's decision was erroneous and then went on to "note" that "many jurisdictions with statutes similar to HRS chapter 386" have amended them. *Id.* at 257, 942 P.2d at 521. This court concluded:

If the legislature should deem it advisable in the future, it can—as have the jurisdictions cited *supra*—amend HRS chapter 386 to exclude from coverage those injuries resulting from disciplinary action taken in good faith by the employer. However, unless and until the Hawai'i legislature chooses to amend HRS chapter 386, we are compelled to reach the result we have today.

*Id.*

receiving prompt compensation.[1] He asks "in all fairness ... whether [his] representation over a year and a half was indeed worth only $292.00." I must agree in part with Petitioner's plaintive inquiry. No matter how inadequate some may think his final product was, I consider $292.00 patently unreasonable in light of the voluminous record involved,[2] the number of attorneys who had previously represented the defendant and withdrawn,[3] the burden of communicating with an imprisoned client,[4] and Petitioner's apparent futile search for an appealable issue.[5] In sum, this case is one in which appointed counsel represents he has perused a voluminous record in an unsuccessful attempt to find an appealable issue, but has filed an appeal because he was required to do so. Under such circumstances, the hours reasonably incurred in representation and not the brevity of his appellate *filings* would be the appropriate measure of fair compensation.

Moreover, the fees allowed Petitioner roughly correlates to one-fourth of the maximum amount of $2,500.00 designated for appellate representation. From a broader perspective, this appears to fall within a reasonable range, as gauged by the maximum allowable fee and, thus, in my view, further validates the total of $614.00. In deciding the attorneys' fees to be awarded, all that is required is a straightforward assessment of whether the amount approved is reasonable in light of the representation afforded, objectively viewed. I see nothing to be gained from any characterization of counsel's efforts whatsoever and do not join in such parts of the majority's opinion.

## II.

The sea change wrought by affording attorneys the right to appeal fee awards bears directly on the adequacy of statutory fee schedules. The amount granted Petitioner, of course, is computed at hourly rates adopted fourteen years ago but still in effect. *See* Hawai'i Revised Statutes (HRS) § 802–5 (1993). In that regard, the *ABA Standards for Criminal Justice—Providing Defense*

1. In his declaration, Petitioner states in part as follows:

    12. I submitted a "bare bones" request for attorney's fees because I was in desperate need of some immediate income to pay for my son's tuition.... If I meticulously detailed all of the time I spent representing [the defendant], I submit the total would be at least twice the amount requested. I did not keep track of the numerous phone conversations I had with [the defendant], nor the time I spent talking about the case with other counsel or all the time spent perusing the record to find any issue at all that merited an appeal[.]

    Petitioner also claimed that he provided the defendant with "substance abuse counseling" even though he was "aware [that he] was not appointed and would not be paid for [this] extra legal work."

    In closing, Petitioner's declaration states:

    14. I admit that I am not God's gift to the legal profession[.] ... However, "fair is fair" and an award of $292.00 for all the work I did in this case is not fair.

2. Paragraph 13 of Petitioner's declaration states:

    13. I simply ask the [c]ourt to take a look at the lower court record, the volume of the record, the substance of the appellate pleadings I filed, and the machinations of the [d]efendant[.] ... Then in all fairness, determine whether my representation over a year and a half was indeed worth only $292.00. I have no idea how the [ICA] arrived at that arbitrary figure.

3. In his declaration, Petitioner asserted that he has "gained a reputation for handling difficult defendants[,]" however, "[i]n [his] almost 25 years of practice, [the defendant in the present case] was, if not the most difficult client, at least in the top three."

4. Petitioner made numerous telephone calls to his client. *See supra* note 1.

5. Petitioner maintains he searched the record to find an appealable issue, but was unsuccessful:

    4.... I reviewed the entire lower court record to determine the issues on appeal, in addition to reading the transcripts of proceedings below;
    ....
    6.... The evidence against [the defendant] was overwhelming from the outset. The lower court record is replete with one frivolous motion after another—all designed simply to toy with the courts and delay the inevitable outcome;
    ....
    8.... I have on more than one occasion attempted to inform the [c]ourt that [the defendant's] appeal was frivolous and that he was simply litigious—the whole judicial process was a game to him, to be played because he had nothing better to do with his time and it was a way that his existence would be recognized;
    9. I even convinced him to withdraw his appeal and he agreed to do so in writing.

*Services* (2d ed. 1986) (hereinafter *ABA Standards* ) maintain that appointed counsel should be paid "at a reasonable hourly rate" because

> it is simply unfair to ask those lawyers who happen to have the skill in trial practice and familiarity with criminal law and procedure to donate time to defense representation.... Indeed, where payments for counsel are deficient, it is exceedingly difficult to attract able lawyers into criminal practice and to enhance the quality of the defense. But most important, the quality of the representation often suffers when adequate compensation for counsel is not available.

Commentary to *ABA Standards,* Standard 5–2.4, at 5–32.

The hourly rate under HRS § 802–5 is no longer reasonable and, although applicable under present guidelines, the compensation extended Petitioner is not adequate by any realistic measure.[6] Insofar as compensation is inadequate, those attorneys who represent indigent clients, in effect, personally subsidize the financial obligation imposed upon the State by the United States and Hawai'i constitutions' mandate that such defendants be represented by counsel.

Realistically, that obligation is not met if private counsel are faced with substandard remuneration under an outdated fee schedule and with grudging fee evaluations by the courts. To place such a burden on private counsel is simply unfair to counsel, may redound to the detriment of the client, and only postpones responsible funding of legal services. As the ABA Standards point out, inadequate compensation also discourages lawyers from entering criminal practice. *See id.* More significantly, *experienced* counsel are discouraged from accepting appointed cases because they are financially incapable

of affording clients suitable advocacy under the existing fee schedule. *See id.* While there may be counsel willing and capable of shouldering financial burdens incurred by such representation on an ad hoc basis, that cannot substitute for a uniform, comprehensive system in which adequate compensation is guaranteed to all appointed counsel.

We should heed, then, the ABA Standards' reprobation that when compensation is not reasonable, the "quality of the representation often suffers." *Id. See State v. Ui,* 66 Haw. 366, 370, 663 P.2d 630, 632, *reconsideration denied,* 66 Haw. 366, 663 P.2d 630 (1983) (stating that "[o]ne of the reasons for requiring that assigned counsel be reasonably compensated is to assure quality representation for indigent defendants" and that this concern "flows from the constitutional right to effective assistance of counsel"). Such a circumstance cannot but have an adverse effect on the administration of justice in our criminal law system.

The viability of that system should be of significant concern to the public, *see Gentile v. State Bar of Nevada,* 501 U.S. 1030, 1035, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991) (recognizing that the criminal justice system plays a vital role in a democratic state and that the manner in which criminal trials are conducted is of utmost concern and importance to the public), but no less so than it should be to the judiciary. Responsibility for the administration of criminal justice in this state ultimately rests with this court.[7] However, some measure of that responsibility must fall on the Bar as a whole. Indeed, by Rule we have directed that

> [t]he purposes of the Hawai'i State Bar shall be *to aid the courts in* regulating, maintaining and *improving the legal profession, administration of justice* and ad-

---

6.  HRS § 802–5(b)(6) also governs with respect to fees allowed in "[a]ny other type of administrative or judicial proceeding including cases arising under chapter 571[.]" In part, the necessity for increasing fees for criminal cases denominated in HRS § 802–5(b)(1)–(5) is warranted not only by contemporary measures of compensation, but by the nature of criminal law practice itself, the increased complexity of the criminal law since the schedule was last amended, and the professional burdens of practice in an area of

law unavoidably fraught with allegations of ineffective assistance.

7.  The official position of the Judiciary, represented through its administrative arm, has not been to submit its own bill or proposal for amendment of the statutory fee schedule, but only to support the efforts of others to revise the fee schedule. This approach, to date, has obviously been ineffectual.

vancements in jurisprudence, in improving relations between the legal profession, the public and *the various branches and instrumentalities of government* in this State, and in promoting the interests of the profession in this State.

Rules of the Supreme Court of the State of Hawai'i Rule 17(b) (emphases added). Consistent with the purposes stated, it is incumbent upon the Hawai'i State Bar Association "to aid the courts ... in improving the legal profession," the "administration of justice," and "relations between ... the various branches ... of government" by working toward revision of the appointed counsel fee schedule.[8] *Id.* As with other "responsibilities" given it, the Bar, in a large sense, has "as its goal the improvement of the practice of law and the standards of professionalism of *all* attorneys" in this State. *Id.* (emphasis added). In endeavoring to achieve that goal, it promotes the highest values of the law and of our judicial system. Like other courts, we may appropriately bring such matters to the attention of the Bar. *See In re Estate of Williams,* 182 So.2d 10, 13 (Fla.1965) (stating that "[i]f this case accomplishes nothing more than to call attention to the inadequacies of [statutes,] it will have served a useful purpose" and that "[the court] ha[s] no doubt that the appropriate committees of The Florida Bar and the Legislature will give attention to making the changes which are necessary to make [the statutes] clear"); *Jones v. Hoffman,* 272 So.2d 529, 531 (Fla.App.1973) ("As exhausting as this opinion has been to prepare, and will be to read, it will be worthwhile if it serves to focus the attention of the bar, the bench, and the legislature on this problem [of the complexity of a comparative negligence system] and bring about action to eradicate one of the worst tangles known to law.") (internal quotation marks and footnote omitted); *Tatelbaum v. Commerce Inv. Co.,*

257 Md. 194, 262 A.2d 494, 498 (1970) ("invit[ing] the attention of the Legislature and of the Bar to the fact that the form of [a secured transaction statute] adopted in Maryland h[a]s produced [a problem] ... which calls for prompt correction by legislative action"); *Lovorn v. Hathorn,* 365 So.2d 947, 952 (Miss.1978) (en banc.) ("call[ing] attention of the Bench, Bar and Legislature to the question (which [the court] do[es] not decide) presented by the one-man one-vote rule which may affect fifty-two (52) municipal separate school districts in the State of Mississippi"); *Jordan Developers, Inc. v. Planning Bd. of City of Brigantine,* 256 N.J.Super. 676, 607 A.2d 1054, 1057 (1992) ("discuss[ing] ... matters [not raised by parties] only to call the attention of the Bar and Legislature to them, in the hope that statutory rectification might be considered"); *Kaminski v. Kaminski,* 81 Misc.2d 725, 366 N.Y.S.2d 848, 849–50 (N.Y.Sup.1975) (holding that absent statutory authority, the local government is not obligated to compensate assigned counsel for an indigent party in a matrimonial action, but "recommend[ing] that an appropriate committee of the Bar Association direct the legislature's attention to the problem presented" and noting that "[the court is] certain that after a study of the problem in all its ramifications, the legislature will provide an adequate remedy through enabling legislation to insure the protection of the indigent and compensation for cooperating attorneys in these cases").

Lastly, where it becomes apparent that the proper administration of justice may suffer from inadequate funding and that issue is germane, as it is here, to the case before us, it is our obligation, if not duty, to make that known to the other branches of government, *see* cases cited in the concurring opinion of Ramil, J., and affected entities [9] inasmuch as

---

8. Failing that, or until then, the members of the Bar might share in shouldering the substantial burden of providing counsel in all criminal cases not assigned to the public defender's office.

9. In opinions, other courts have also noted matters of law for consideration by other entities. *See Goebel v. Colorado Dept. of Institutions,* 764 P.2d 785, 801 (Colo.1988) (discussing care of chronically ill patients under the Care and Treatment Act, under which plan for care could be

implemented until the appropriated funds ran out, and "defendants then would have had the obligation to bring to the legislature's attention the inadequacy of the funding to satisfy the plaintiffs' rights"); *Milmir Const. v. Jones,* 626 So.2d 985, 987 (Fla.App.1993) ("bring[ing] th[e] problem [of lack of statutory authority for disqualification of judges of compensation claims] to the attention of the Florida Legislature and the members of the Florida Workers' Compensation Rules Committee" and "strongly suggest[ing] that they

we, more than any other body, would be most knowledgeable of such matters. *See State v. Rush*, 46 N.J. 399, 217 A.2d 441, 449 (N.J. 1966) ("We do no more than recognize the desirability, in the public interest, for an opportunity for the other branches of government and the agencies concerned to consider the problem."). In that context, no more appropriate avenue for the discharge of our *individual* judicial obligations exists than through our written opinion. The choice and wisdom of exercising that prerogative must rest with each justice and no justice should shirk from exercising that judicial prerogative or be deterred by any veiled attempt to muzzle such expression.

should consider enactment of law and promulgation of rule, respectively, to guide the trial bench and bar as well as this court when considering disqualifications of judges of compensation claims"); *Singletary v. Carpenter*, 705 So.2d 110

(Fla.App.1998) (If [the court's construction of a statute based on its plain language] "is inconsonant with the true legislative intent, we point out this apparent anomaly to interested parties to bring to the legislature's attention.").